Garcie T. ROSE, Plaintiff,

v.

Robert H. FINCH, Secretary, Health, Education & Welfare, Defendant.

Civ. A. No. 68–C–119–A.

United States District Court
W. D. Virginia,
Abingdon Division.

June 10, 1969.

---

William J. Sturgill, Greear, Bowen, Mullins & Winston, Norton, Va., for plaintiff.

William C. Breckinridge, Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION and JUDGMENT

DALTON, Chief Judge.

Pursuant to 42 U.S.C.A. § 405(g), the claimant, Garcie T. Rose, has requested this court to review the decision of the Secretary of Health, Education and Welfare which became final on November 20, 1968, when the Appeals Council denied claimant's request for review. This final decision was adverse to claimant's request for the establishment of a period of disability under the Social Security Act § 216(i), 42 U.S.C.A. § 416(i), as amended, and for disability insurance benefits as provided for in the Social Security Act § 223, 42 U.S.C.A. § 423, as amended.

The court's only purpose in this review is to determine if there is substantial evidence in the proceedings to support the Secretary's decision, 42 U.S.C.A. § 405(g). If this court finds such substantial evidence, our inquiry must cease, and the Secretary's decision will be conclusive, Snyder v. Ribicoff, 307 F.2d 518 (4th Cir. 1962). The function of this court is to determine if there is sufficient evidence to support the administrative findings.

As defined in the Social Security Act in § 223(d), 42 U.S.C.A. § 423(d) (1), (2) (A) and (3), as amended, (Supp. 1969), disability means—

\* \* \* inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months \* \* \*.

\* \* \* \* \* \*

\* \* \* an individual \* \* \* shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

\* \* \* \* \* \*

For purposes of this subsection, a "physical or mental impairment" is an

impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. This amended definition applies to court decisions which have not become final before January, 1968. Pub.L. No. 90–248, § 158(e) (2) (B), 81 Stat. 821.

■ In order to be entitled to a period of disability under § 216(i), 42 U.S.C.A. § 416(i), and to disability insurance benefits under § 223 of the Act, 42 U.S. C.A. § 423, claimant has to establish that he was under a disability, as defined above, which commenced at a time when he met the special insured status requirements of the above sections.

Claimant meets the special insured status requirements through the quarter ending December 31, 1970. Therefore, on the basis of his application of March 2, 1967, claimant must establish that he was under a disability which commenced prior to November 20, 1968, when the final decision of the Secretary was rendered in this case.

Claimant alleges that he became disabled to engage in any substantial employment beginning on January 22, 1967. At that time, claimant was working as a coal miner. He alleges that he was forced to stop working because of a multiplicity of physical and mental defects which had their origin in June 1965 when he was injured in a "slate fall" in a coal mine in which he was working. Claimant's alleged infirmities include primarily dizziness and "blackout spells", temporary losses of vision and a conversion reaction.

Claimant testified that he is 46 years old and that he has a fifth grade education. He has been married 22 years and is the father of 12 children. His past work experience includes 3 years in the Civilian Conservation Corps, a 6 year tour of duty in the Army as a litter bearer and 19 years in the coal mines as a loader, trackman, timberman, and finally as a machineman. It is to be noted that he has also engaged for many years in timbering on a self-employed part-time basis.

A hearing was held in claimant's case by the Department of Health, Education and Welfare on July 16, 1968. Therein claimant explained why he believes himself to be disabled. He complained that after the mine accident which temporarily paralyzed the lower half of his body, he had to lay off at the mine. He returned in two months, but found that he could not work because of severe headaches accompanied by dizzy spells. Thereafter, he tried to continue his timbering business, but by this time the severe headaches had matured into "blackout spells". He has been relieved of these spells since having been treated for diabetes, but a new malady has arisen, that of "total blindness."

Since claimant stopped work in January 1967, he says he spends most of his time babysitting, feeding the hogs, picking berries and on occasion he has helped his boys file saws. He still drives the family pickup truck, but never alone for fear that he will have a "blackout spell".

The medical evidence submitted is as follows:

In November, 1965, claimant was examined by Dr. McFaddin, a Board certified specialist in orthopedic surgery, who concluded after an appropriate physical examination which included x-ray and laboratory studies, that there was nothing wrong with the claimant. Dr. McFaddin stated:

This man's multiple complaints are not substantiated by his physical examination. Obviously he did sustain contusion and injury to his back, perhaps his neck and may well have had some ileus or distension, abnormal distention, after his trauma. Ther (sic) is certainly no evidence of any loss of function of the gastrointestinal tract. No urinary disorder and no musculoskeletal impairment at the present time. I know of no orthopedic or medical reason at the present time why this man cannot return to his former work.

In February, 1967, claimant was examined by Dr. Nelson, a psychiatrist, who concluded on the basis of his examination that:

The patient's diagnosis is compatible with a seizure disorder, jacksonian type and may actually or rather it appears to have started since his recent injury on June 14, 1965. It may well be that this is merely aggravated the old condition and made it worse. However, the patient does have serious difficulty at the present time.

In April, 1967, claimant was sent on Dr. Nelson's recommendation to the Veterans Administration Hospital in Roanoke. In a summary of their report, the Hospital authorities stated in part:

He (claimant) had been very hostile when approached about the idea of going to work, claimed that he was not able and was determined to receive "compensation" because of the accident.

The report also states that the claimant was not receiving any medication at the time of his elopement from the hospital against medical advice on May 2. As for claimant's "blackout spells", the hospital reported:

It is felt that this patient had not had any epileptic seizures. He seems basically a hysterical type individual who has been raised up in an impoverished social environment, apparently resulting in his ease of registering physical complaints.

In July, 1967, claimant was again examined by Dr. Nelson who concluded after his examination:

Essentially we have a normal neurological examination here today. The patient gives evidence of good use of hands, well muscles, good strength, use of hands, arms, extremities and general body activity, suggesting at least some type of activity more than just sedentary type.

Because of previous history of seizure like disorder and plate in his skull and other troubles, we have gone ahead and requested electroencephalogram studies and skull x-rays studies. This is also done because of the question of cooperativeness at the Veterans Hospital where he refused to stay for such tests and these will generally clarify any diagnosis of seizure disorder we might entertain.

Following receipt of the requested studies, he added:

We have had the opportunity to review the electroencephalogram studies and the x-ray studies. We find no evidence to support the diagnosis of seizure disorder, either in classical seizure disorder in electroencephalogram and x-ray studies nor in our clinical examination of the patient.

Claimant was also examined by Dr. Wayne, a psychiatrist, in November, 1967, and the following summary was reported:

This patient was able to work until he had an accident in the mines, and since that time he has developed a conversion reaction. He had made up his mind that he is unable to work. He was pretty hostile during the clinical interview toward other doctors, especially the VA Hospital examiners. His symptoms appear to be more psychogenic than organic. We feel that his symptoms are well fixed, chronic, and probably permanent. His dizzy spells and blackout spells seem to be basically of a hysterical type rather than epileptic seizures. It is felt that he suffers constantly from his symptoms.

The claimant alleges he has been unable to work since January, 1967 because of dizziness and "blackout spells". The claimant has the burden of proving that he is under a disability as defined by the Social Security Act, 42 U.S.C.A. § 416(i). Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). This burden, however, need not be carried beyond a reasonable doubt. Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964). The Secretary does not have the burden of making an initial showing of nondisability. Justice v. Gardner, 360

F.2d 998 (6th Cir. 1966). It is also clear that the mere presence of a disease or impairment is not in and of itself disabling, but it must be shown that the disease or impairment causes functional limitations which preclude claimant from engaging in substantial gainful activity. Gotshaw v. Ribicoff, 307 F.2d 840 (4th Cir. 1962).

An examination of the medical evidence discloses that claimant has no physical impairment which precludes him from engaging in substantial gainful activity. If there is any impairment it must be mental. However, the claimant's alleged dizziness and "blackout spells" have no organic basis and are not substantiated by objective medical evidence. The principal mental difficulty which was mentioned by Dr. Wayne is that claimant has determined that he is unable to work. Therefore, the primary evidence of disability is claimant's own allegation and it is well settled that the Secretary need not accept the testimony of an interested witness even if it is not squarely contradicted. Foss v. Gardner, 363 F.2d 25 (8th Cir. 1966).

In addition, the fact that one is poorly motivated to do work is not evidence of a disabling medical impairment. Bower v. Celebrezze, 211 F.Supp. 39 (W.D.Va.1962).

A preponderance of the medical evidence is to the effect that the claimant's physical and mental impairments would not preclude him from engaging in substantial gainful activity. We think this medical evidence is sufficient to insulate the decision of the Secretary from reversal by this court.

The hearing examiner considered the objective medical evidence, as well as the factor of pain and as the trier of facts his findings and the reasonable inferences therefrom are conclusive. Snyder v. Ribicoff, supra.

The court is not impressed by the claimant's attempt to refute the testimony of the vocational witness. The claimant did not go to the employers seeking employment, but went there to obtain a statement from the employers that they would not hire him. Claimant did not seek employment, and the question of whether he would be hired if he applied for work is irrelevant. Mullins v. Gardner, 396 F.2d 139 (6th Cir. 1968).

Our review of the entire record convinces us that the decision of the Secretary is supported by substantial evidence. Accordingly, the defendant's motion for summary judgment is hereby granted.

The clerk is directed to send a certified copy of this opinion and judgment to counsel of record.