Margaruite J. BRANCH, Plaintiff,

v.

Robert H. FINCH, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. T-4561.

United States District Court,
D. Kansas.

April 22, 1970.

Reginald LaBunker, Topeka, Kan., for plaintiff.

Robert J. Roth, U. S. Atty., Elmer Hoge, Asst. U. S. Atty., Topeka, Kan., for defendant.

## MEMORANDUM OF DECISION

TEMPLAR, District Judge.

This proceeding was instituted by plaintiff against the Secretary of Health, Education and Welfare as is authorized by and pursuant to Section 205(g) of the Social Security Act, 42 U. S.C. § 405(g), for the purpose of obtaining a judicial review of a final decision of the Secretary denying her application for disability insurance benefits under Sections 216(i) and 223 of the Act, 42 U.S.C. § 416(i) and 423. An affidavit being filed, this Court, on April 25, 1969, entered an order granting plaintiff leave to sue forma pauperis without securing costs.

Both parties in this action have submitted motions for summary judgment together with briefs to support their respective positions.

The plaintiff filed her application to establish a period of disability on February 28, 1968, as provided in Section 416(i), and for disability insurance benefits, as provided under Section 423 of the Act. Claimant alleged, in substance, that she became unable to work because of a badly sprained back on September 23, 1967. The application was denied initially and on reconsideration. On December 11, 1968, a hearing was conducted before the hearing examiner of the department, at which the plaintiff was present without an attorney. The hearing examiner filed his decision denying plaintiff's application on December 30, 1968. The appeals Council upheld the decision of the hearing examiner upon the plaintiff's request for review. The hearing examiner's decision became the final decision of the Secretary of Health, Education and Welfare. The claimant will meet the earnings requirement until June 30, 1972.

The hearing examiner determined that, in view of the claimant's limited education and age, training for sedentary work would not be profitable for her. In his determination that the claimant is not entitled to a period of disability or to disability insurance benefits, the hearing examiner made the following findings:

### "FINDINGS OF FACT

"1. The claimant is approximately 59 years of age and she has an eighth grade education.

"2. The claimant has worked as a laundry worker, waitress, maid, and nurse's aide.

"3. In September 1967 the claimant began to suffer from back pain and she was treated for the condition at St. Francis Hospital, Topeka, Kansas.

"4. Orthopedic examination of the claimant's back in May 1968 resulted in a diagnosis of mild musculoligamentous strain residuals with underlying mild lumbar degenerative joint disease.

"5. The claimant has not attempted to secure work since leaving her employment with the A. T. & S. F. Hospital, Topeka, Kansas, in 1967.

"6. While the claimant's back condition has possibly prevented her from returning to work as a maid, she has not been prevented from working as a waitress, laundry helper, or nurse's aide for a period of twelve months or more and she is currently able to engage in this type of activity.

### "CONCLUSION OF LAW

"The claimant has not been prevented from engaging in substantial, gainful activity for a period of twelve months

or more at any time prior to the date of this decision and she is presently able to work as a waitress, laundry helper, or nurse's aide." (Record P. 9, 10).

The primary issue before this Court is whether or not there is substantial evidence to support the Secretary's decision that plaintiff was not entitled to a period of disability or to disability insurance benefits and specifically whether plaintiff has been unable to engage in substantial gainful activity by reason of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.

The definition of disability set forth in § 423(d) (1) provides:

"(d) (1) The term 'disability' means—

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months * * *."

"(2) For purposes of paragraph (1) (A)—

(A) an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. * * *"

* * * * * *

"(3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from an atomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

* * * * * *

"(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."

██ The word "any" as used in the phrase "any substantial gainful activity" must be read in light of what is reasonable and not what is merely conceivable. See Huneycutt v. Gardner, 282 F.Supp. 405 (M.D.N.C.1968).

██ This Court recognizes that judicial review of final decisions of the Secretary is a defined and limited one. See Folsom v. O'Neal, 250 F.2d 946 (10th Cir. 1957); Gordon v. Celebrezze, 253 F.Supp. 779 (D.Kan.1965); Jones v. Celebrezze, 246 F.Supp. 701 (D.Kan. 1965); and Shonk v. Gardner (Templar, J., No. T–4354, unreported). The Court pointed out in Gardner v. Bishop, 362 F.2d 917, 919 (10th Cir. 1966), that findings of fact by the Secretary and the inferences drawn from such findings should not be disturbed by a reviewing court, "if there is substantial evidence to support them. Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Stated in a different manner the evidence must be such, if the trial were to a jury, as would justify a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. If there is only a slight preponderance of the evidence on one side or the other, the Secretary's finding should be affirmed. See Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

██ This Court is aware of the principle that the Act should be construed liberally in favor of a party seeking its benefits. See Davidson v. Gard-

ner, 370 F.2d 803 (6th Cir. 1966); Dvorak v. Celebrezze, 345 F.2d 894 (10th Cir. 1965); and Ketcherside v. Celebrezze, 209 F.Supp. 226 (D.Kan.1962). It is clear that a court is not to try a case de novo and that it must not abdicate its traditional function to scrutinize the entire record in order to determine whether the conclusions made by the Secretary are rational and if the court should determine that reliance has been placed upon one portion of the record in disregard of overwhelming evidence to the contrary, then the court is bound to modify or reverse the Secretary's findings with or without remanding the case for rehearing. See Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964) and Burrell v. Finch, 308 F.Supp. 264 (D. Kan.1969). The plaintiff's age, education, training, experience, and physical and mental capabilities are of considerable importance in determining her rights to disability benefits under the Act. See Ellerman v. Flemming, 188 F.Supp. 521 (D.Mo.1960) and Aniol v. Flemming, 188 F.Supp. 233 (D.Kan.1960).

The record discloses that claimant resides at 627 W. 17th Topeka, Kansas, has a seventh grade education, and was approximately 59 years of age at the time of the hearing. There is some discrepancy as to the level of education attained by the claimant. Although the hearing examiner found that the claimant had an eighth grade education, the claimant testified that she had finished the seventh grade. In her request for reconsideration (Record P. 67) the claimant stated that she had only an eighth grade education, and Dr. Miller made reference to the eighth grade in one of his reports (Record P. 51). The claimant testified that she is married, but separated, and has eight children living. (Record P. 21). The claimant's past work record may be summarized as follows: waitress for a number of years; nurse's aide; worked for a laundry as an ironer; and worked as a maid at the Santa Fe Hospital, which was her most recent employment. Additional testimony offered by the claimant may be summarized as follows:

The claimant does not have a driver's license or a car, but she is able to use the public buses. She testified that she is 5′ 3″ and weighs 139 lbs., although she used to weigh 165 lbs. The claimant stated that she weighed 165 when she got hurt, then in response to a question of the hearing examiner she stated that she weighed up in the 40's in September 1967. She worked for Santa Fe Hospital for 3 years as a maid, and the work involved scrubbing, dusting, washing windows and waxing.

The claimant testified that while she was scrubbing the floor, the bed broke and she slipped. She stated that she went to St. Francis Hospital and was there for 12 days. She further stated that she had doctored with Dr. Rook and took treatments at the Santa Fe Hospital before she had to quit at Santa Fe. She said that she felt better for a while after being released. She testified that she received a workmen's compensation settlement.

The claimant said that she did not look for any work after the injury occurred because she is not able to work. In relation to her back she stated that whenever she does a lot of stooping, scrubbing or anything like that, or standing on her feet any length or period of time it bothers her. She has not had any surgery on her back but the doctor said she might have to, although he did not advise it now. She testified that she stays home and watches television, and that she is able to make her meals and take care of her personal needs. She cannot do any mopping, ironing, scrubbing, washing, lifting or anything like that because it bothers her. She does not wear a back brace, and the doctor has not suggested that she should. She takes the medicine the doctor gives her and heat treatments. The heat treatments consist of heating towels

in hot water and putting them on a heat pad. In regard to house cleaning the claimant dusts and things like that. She visits her daughters and she has company once in a while.

The claimant's support consists of $83 a month from welfare. In reference to a question about attempting to find work as a waitress she stated that she did not think she could stand up on her feet that long. She testified that steady walking bothers her, and she does not think she could stand up as a waitress carrying heavy trays and plates. She indicated that she likes to work and wishes she could. She stated that her back feels worse when she gets up and around during the day and when she turns over at night it bothers her, but the heat treatments help a lot. The doctor has not suggested that she should exercise for the back condition, but said she could not do any heavy work. She indicated that her back feels worse when she goes to bed than when she gets up.

Two of the claimant's daughters testified that they clean house for her. They do the scrubbing, ironing, washing and waxing. One of the daughters testified that in her opinion her mother's back condition would keep her from working as a maid.

In the claimant's hospital admission report dated October 1, 1967, Dr. Kirk Miller, M.D., claimant's personal physician, stated the admission diagnosis as "Low back syndrome" and "Constipation". (Record P. 45) In this report Dr. Miller noted the claimant's chief complaint was low back pain and he gave the following summary of claimant's illness:

"About two weeks ago, while mopping at Santa Fe Hospital, patient noted gradual onset of low back pain. It became so severe that it was finally necessary for her to quit work. I have been seeing her in my office during the past week at which time she was put on muscle relaxants and diathermy, but all to no avail. She still continued to have her pain. It was decided to put her in the hospital where we could obtain some studies, possibly a myelogram; in any event, to treat her more intensively with heat and bedrest and traction." (Record P. 45)

The doctor made the following physical examination findings in this same report:

"Well developed, well nourished, 57-year old female appearing younger than stated age, not appearing acutely or chronically ill. HEENT * * * Pupils round, regular, equal, react well to light and on accomodation. Ear canals and drums clear. Pharynx clear. Neck supple; no thyroid enlargement. Chest clear to percussion and auscultation. Heart reveals regular sinus rhythm; no murmurs or enlargement. Abdomen soft; no masses, spasms, tenderness; LKSB not felt. Extremities relatively unremarkable. There is considerable tenderness to deep palpation over the lower lumbar spine and just lateral to the lower lumbar spine around L–4, L–5 bilaterally." (Record P. 45)

In the hospital discharge report dated October 12, 1967, Dr. Miller noted:

"Patient was admitted with a 2-weeks history of low back pain; she has had one previous episode. Admitted for conservative treatment of back condition and possible myelogram if she did not clear. Px revealed considerable tenderness to palpation over the lower lumbar spine and just lateral to the lower lumbar spine around L–4, L–5, bilaterally. WBC revealed slight shift to the left, which was normal with 70 polys, 22 lymphs. IVP negative. Quantitative urine for culture was negative. Chest film normal. Spine films revealed degeneration and/or herniation of the L–4, L–5 disc.

"Patient was placed in bed and given a Kapok pad warm heat treatment to her lower back. She was given Ultrasound daily to lower back by the physiotherapy department, placed on Dar-

von–65 p. r. n. pain. Over a period of a week back pain gradually disappeared. During this period of time she also noted frequent urination and nocturia 3–4m. Urinary studies were carried out which were negative. She recovered completely from back pain after 12 days in the hospital and she is being sent home today taking no medication except Darvon p. r. n. She will continue her Parafon Forte, if necessary. It is decided that she can return to work if her back pain disappears. Her work seems to aggravate her condition and it may be necessary for her to find some other profession because of this difficulty." (Record P. 47)

Dr. Miller indicated his final diagnosis in the hospital discharge report as:

"Degeneration and/or herniation of L–4, L–5 disc

Frequent urination, cause undetermined" (Record P. 57)

In another report dated March 20, 1968, Dr. Miller stated his diagnosis as "Low back syndrome with probable herniation of L–4 to L–5 disk." (Record P. 51) The following history of the patient was given by Dr. Miller in this report:

"This patient originally injured her back while working for the Santa Fe Hospital in the Winter of 1966–1967. At that time her anterior thigh muscles hurt while mopping, and she was off of work for 10 days. Again on September 11, 1967 while scrubbing a floor, her back began to hurt and has been hurting ever since. She was put on Parafon Forte, given diathermy treatment, a bed-board was suggested for her, and she had to use moist heat at home, and treatment continued from September 25th until October 1st, 1967 without much relief. She was hospitalized at St. Francis Hospital from October 1 to October 12, 1967, and her back was considerably improved. When seen on October 23, 1967, it was felt she could return to work and do light work. At that time she was given Darvon Compound and

feeling much better. She was seen again in November and December of 1967, and January and February of 1968, at monthly intervals, at such time she stated that she had some soreness occasionally. Straight legraising was O.K. bilaterally except for slight soreness on the left when elevated to 90 degrees. It was felt that she would be able to continue to work in a sedentary type job but she should never again do heavy lifting or mopping such as she had done previously." (Record P. 48)

Dr. Miller further noted in this same report that "Because of this patient's limited educational background (8th grade) it will probably be difficult for her to obtain sedentary type of occupation which will be required for her with her difficulty." (Record P. 51)

In a report dated May 13, 1968, Dr. W. L. Beller, a radiologist, to whom the claimant had been referred by Dr. Donald D. Hobbs, stated as his conclusion the following:

"Moderate degenerative disc disease at the L4 level. Mild rotoscoliosis of the dorsolumbar spine. No other significant abnormality is apparent." (Record P. 58)

Dr. Donald D. Hobbs, specialist in orthopedic surgery, submitted a report dated May 27, 1968, in which he noted that the claimant complained of persistent low back pain with aching discomfort aggravated by bending and stooping. In this report Dr. Hobbs made the following findings upon examination of the claimant:

"Examination today reveals an alert, co-operative woman in no apparent distress. She moves about the examining room with normal gait. Does heel and toe walking without evidence of muscle weakness. There is no significant evidence of guarding on performance of trunk motions. Range of motion of the lumbar spine in flexion, extension and lateral flexion is essentially normal. The patient complains of increased discomfort on left lateral

flexion and on hyperextension. There is mild tenderness over the paravetebral musculature on the left with deep palpation. No significant gluteal sciatic notch tenderness. The patient complains of pain on any attempted mobilization of the left lower extremity, hip-knee flexion, straight leg raising or simple rotary motions of the hip joint. Certainly there is no appreciable limitation of straight leg raising and Laseque's test is negative. Domarque, Trendelenburg, Ober and Ely tests are all negative. The neurologic check including motor, sensory and reflex activity over the segmental distribution of the lumbosacral plexus is entirely physiologic. Babinski's sign is bilaterally absent. The popliteal stretch test is entirely negative." (Record P. 61)

Dr. Hobbs stated his impression as "Mild musculo-ligamentous strain residuals with underlying mild lumbar degenerative joint disease" and he concluded his report by saying "It is my impression that this patient is a suitable candidate for moderate work activity perhaps to exclude excessive bending, stooping and heavy lifting."

Dr. Miller submitted a supplemental report dated August 16, 1968, in which his diagnosis was:

"1. Low back syndrome, probable herniation of L–4 to L–5 disc.

2. Chronic rhinitis." (Record P. 72)

Dr. Miller further stated in this report:

"I saw the patient on March 25, 1968, at which time she had subsequently had a mild urinary tract infection prior to this time which was cleared up. She was having difficulty with leg cramps. A calcium and phosperous determination were obtained and found to be within normal limits. The patient stated that her back was well at that time. I saw the patient again on April 19, 1968 at which time her back was bothering her off and on but not as sore as usual. She had an acute bronchitis for which she was treated with expectorants, decongestants and given a course of inhalation therapy. She continued this until April 27, 1968, at which time was quite recovered from the infection.

I did not see the patient again until August 10, 1968, at which time she stated that she was still having some back trouble. She reported that she had stooped over one time last week and her back hurt her for only one day. She also stated that it hurt her to do any scrubbing or any physical work. She also had a chronic rhinitis. For the rhinitis I gave her some decongestants and sprays. She stated that she was taking Darvon Compound 65 PRN for her back difficulty." (Record P. 69)

The hearing examiner noted that the claimant "seemed somewhat younger than her stated age of 59, and about her stated height and weight of 5 feet 3 inches and 139 pounds, respectively." (Record P. 8) He also stated that the claimant "exhibited no significant signs or symptoms of any mental or physical impairments during the hearing." (Record P. 8)

In the disability interview report the interviewer indicated that claimant displayed no difficulty with walking, speaking, sight, hearing, use of hands and arms, breathing, sitting, reading, writing, responding, language, or comprehending. (Record P. 55)

■■ The finding of disability in a social security disability case involves a two-step finding. First, there must be a finding that the claimant has a medically determinable physical or mental impairment. Second, assuming such impairment is found to be present, there must be a finding of whether the impairment, in fact, causes an inability to engage in any substantial gainful activity. See Knelly v. Celebrezze, 249 F. Supp. 521 (M.D.Pa.1965), and Burrell v. Finch, 308 F.Supp. 264 (D.Kan.1969). The first finding may require the application of objective and subjective evidence and the second is almost an entire-

ly subjective determination. See Mauldin v. Celebrezze, 260 F.Supp. 287 (D.S.C.1966). Certain elements of proof should be considered in making a finding of claimant's ability or inability to engage in any substantial gainful employment, and they are: objective medical facts and clinical findings; diagnoses and expert medical opinions of treating and examining physicians; subjective evidence of pain and disability testified to by claimant and other lay witnesses; and the educational background, work history and present age of claimant. See Morgan v. Gardner, D.C., 254 F.Supp. 977, and Huneycutt v. Gardner, supra.

▇▇▇ As the defendant stated in his brief there is no question whether plaintiff has a back impairment and back pain because all the medical evidence indicates that she does. The defendant also correctly stated that the key question is whether that impairment and the attending pain are so severe that plaintiff is unable to engage in substantial gainful activity. (Defendant's Brief P. 5) The first portion of the two-step test has been met in that the plaintiff has a medically determinable impairment. The second part of the test as to whether that impairment and accompanying pain are so severe that the claimant is unable to engage in any substantial gainful activity is mainly a subjective determination. This Court is well aware of the fact that pain can be so severe as to be disabling in itself, with or without objective symptoms. See Bailey v. Cohen, (Templar, J., No. T–4266, unreported). The test is not whether the impairment, subjective or objective, would be disabling to a theoretical person but instead whether the subjective complaint independently or together with other impairments is disabling to this particular claimant. See Shonk v. Gardner, (Templar, J., No. T–4354, unreported); Burrell v. Cohen, supra; and Franklin v. Secretary of Health, Education and Welfare, 393 F.2d 640 (2d Cir. 1968). Subjective symptoms should be evaluated with due consideration for credibility, motivation, and medical evidence of impairment. See Dvorak v. Celebrezze, supra. The burden of proving disability under the Social Security Act is with the claimant, See McMillin v. Gardner, 384 F.2d 596 (10th Cir. 1967), and this burden need not be carried beyond a reasonable doubt. See Rose v. Finch, 303 F.Supp. 35 (W.D.Va.1969).

▇▇▇ In the present case the plaintiff testified before the hearing examiner that she could perform certain household chores and that she could take care of her personal needs. A claimant need not be completely helpless, bedfast or at death's door in order to sustain her claim for disability benefits. See Perkins v. Ribicoff, 201 F.Supp. 332 (E.D.Ark.1961). The ability to do light housework does not constitute a true test of ability to engage in substantial gainful activity. See Murphy v. Gardner, 379 F.2d 1 (8th Cir. 1967); Jarvis v. Ribicoff, 312 F.2d 707 (6th Cir. 1963); and Mims v. Celebrezze, 217 F.Supp. 581 (D.Colo.1963).

▇▇▇ The plaintiff in this case does have an impairment, a back condition, and there is testimony and evidence that she suffers some pain. The hearing examiner determined that the plaintiff could work as a waitress, laundry helper, or nurse's aide, occupations in which she had formerly engaged in. The Secretary does not have the duty of finding a specific employer for a specific job. See Gardner v. Brian, 369 F.2d 443 (10th Cir. 1966). In Statzer v. Cohen, 297 F.Supp. 874, 877 (W.D.Va.1969) the Court stated:

"The question here is not whether the claimant would be hired by an employer if he applied for work, but rather, whether he is physically and mentally capable of performing work which exists in significant numbers in the national economy."

Two of the examining physicians found, in effect, that the plaintiff could return to some type of work, either sedentary

or moderate, although not to her former employment. Dr. Miller noted in one of his reports that "Because of this patient's limited educational background (8th grade) it will probably be difficult for her to obtain sedentary type of occupation which will be required for her with her difficulty." (Record P. 51) This last notation is only an opinion of Dr. Miller, and this determination is for the Secretary to make after a review of all the proceedings in the case. The type of substantial gainful activity that a disability claimant can be found able to engage in must be both substantial and gainful, realistically judged by his education, training and experience. See Jones v. Gardner, 282 F.Supp. 56 (W.D. Ark.1966), and Nichols v. Gardner, 361 F.2d 963 (8th Cir. 1966). The fact that a claimant for disability benefits could not work without pain or discomfort does not satisfy the test for disability under the act. See Coomes v. Ribicoff, 209 F.Supp. 670 (D.Kan.1962). It must be remembered that the Social Security Act is not to be interpreted as unemployment compensation insurance. See Celebrezze v. Sutton, 338 F.2d 417 (8th Cir. 1964), and Richard v. Celebrezze, 247 F.Supp. 183 (D.Minn.1965).

■ The plaintiff's attorney stated in his brief:

"The problem in plaintiff's case is not whether there is waitress, laundry helper, or nurses aide work available, and whether she would be hired if she applied for those jobs that the hearing examiner determined that plaintiff could do, but rather whether under the medical evidence and plaintiff's own testimony she could perform those occupations on a 'sustained basis' to the extent that she could have been 'substantially gainfully employed' during the past two years." (Brief P. 8)

The finding of the hearing examiner that the claimant is able to work as a waitress, laundry helper or nurse's aide is not entirely supported by the objective and subjective factors considered in this case. Employment as a waitress could not be considered in any sense of the imagination as "sedentary" or "moderate" work activity. The plaintiff testified that she worked as an ironer for the American Linen Company for about eight months, but she left this employment when the company closed down. It is to be noted in this case that the plaintiff has made no effort to seek substantial gainful employment of any type. There is evidence that the plaintiff has a back impairment with accompanying pain; there is evidence that the plaintiff should not return to her former work as a maid at the Santa Fe Hospital; and there is evidence that the plaintiff is able to perform some type of work. The only evidence contrary to the plaintiff's ability to work is the plaintiff's belief that she cannot work. In the case of Carden v. Gardner, 352 F.2d 51, 52 (6th Cir. 1965) the Court stated:

"* * * it is also the rule that where the Secretary has found from the evidence that the claimant is able to engage in a former trade or occupation, such a determination 'precludes the necessity of an administrative showing of gainful work which the appellant was capable of doing and the availability of any such work.' "

After considering the objective and subjective factors in this case the Court concludes that plaintiff is able to work as a nurse's aide and may be able to work as a laundry helper, occupations in which she was once engaged.

■ There is evidence and testimony in this case that the plaintiff received a small, lump sum workmen's compensation settlement. A determination of disability by a state or some other agency is not binding on the Secretary in a social security disability benefits case. See Neel v. Ribicoff, 204 F. Supp. 914 (D.Or.1962); Dupkunis v. Celebrezze, 323 F.2d 380 (3rd Cir. 1963); Sampson v. Flemming, 189 F.Supp. 725 (D.Kan.1960); and Stancavage v. Celebrezze, 209 F.Supp. 781, reversed on other grounds 323 F.2d 373 (3rd Cir. 1963).

The plaintiff's attorney makes reference in his brief to the fact that the claimant was without representation of counsel during the proceedings. In Hullom v. Burrows, 266 F.2d 547, 548 (6th Cir. 1959), cert. den. 361 U.S. 919, 80 S.Ct. 262, 4 L.Ed.2d 187, it was said:

"The Sixth Amendment to the Constitution of the United States, which provides that in criminal prosecutions the accused shall have the assistance of counsel for his defense, does not apply to civil cases."

In his decision the hearing examiner stated that " * * * claimant did not have a representative, but was fully advised by the Hearing Examiner of her right to be represented, which right was waived by the claimant." (Record P. 5) There is no evidence in the record that the hearing examiner made any inquiry regarding claimant's representation at the hearing. Apparently the claimant did receive a notice of hearing which included information concerning representation, which read in part, "While it is not required, you may be represented at the hearing by an attorney or other qualified person of your choice, if you desire assistance in presenting your case." (Record P. 14) It then discussed the payment of a fee to the attorney or other representative. A claimant's lack of counsel in a social security disability benefits case does not require reversal of a decision denying benefits if the claimant had a fair opportunity to be heard, full opportunity to present evidence, and was not prejudiced by the absence of counsel. See Meola v. Ribicoff, 207 F.Supp. 658 (S.D.N.Y.1962). It is worthy of note in this case that the plaintiff was represented by an attorney in her workmen's compensation claim, which occurred prior to the proceedings in this case, and two letters from the plaintiff's attorney relating to the workmen's compensation claim were submitted at the hearing. The plaintiff's attorney in her workmen's compensation claim is the same attorney now representing the plaintiff on this review. The plaintiff was given a full and fair hearing before the hearing examiner even though she was not represented by counsel.

Plaintiff's attorney stated in his brief at page 3 that plaintiff weighed 165 pounds when hurt and she weighed 139 pounds at the time of the hearing. This statement is not supported by the evidence and testimony in the case. The plaintiff testified that she weighed 165 pounds until she was hurt, but in response to a question of the hearing examiner as to whether she weighed 165 pounds in September 1967 she stated that she weighed in the 40's then. (Record P. 21, 22) In the hospital admission report, Dr. Miller noted in his systemic review that claimant had lost 10 pounds in the last year. (Record P. 45) There is no evidence or testimony in this case that the plaintiff suffered a substantial loss of weight because of her injury or that any weight loss contributed adversely to her condition.

Plaintiff's counsel cited two Kansas workmen's compensation cases, Hanna v. Edward Gray Corp., 197 Kan. 793, 421 P.2d 205, and Miller v. Beech Aircraft Corp., 204 Kan. 184, 460 P.2d 535, in support of the proposition that the testimony of the plaintiff as to the duration of disability is to be considered as well as medical testimony. Although these two state cases involved workmen's compensation, the proposition is one which would be considered by the Secretary in reaching his decision in a social security disability benefits case. It was not overlooked in the present case.

The Secretary's determination is final if supported by substantial evidence. Any conflicts in the evidence or in reasonable inferences to be drawn therefrom is for the Secretary and not for the Court to resolve. Even if there is only a slight preponderance of evidence on one side or the other the Secretary's findings must be affirmed. See Ferrell v. Gardner, 260 F.Supp. 996 (S. D.W.Va.1966). This Court has carefully examined the record and briefs submitted in this case and concludes that the

findings of the Secretary are supported by substantial evidence except for the finding that the plaintiff could work as a waitress. This Court is convinced that the record fails to disclose that the plaintiff's impairment is of sufficient severity as to be disabling within the meaning of the Social Security Act.

For the above reasons, the Court must conclude that the decision of the Secretary be affirmed, the motion of the defendant for summary judgment is granted, and the complaint be dismissed.

It is so ordered.