**F. C. THOMAS, Plaintiff,**

v.

**Caspar W. WEINBERGER, Secretary of Health, Education, and Welfare, Defendant.**

**Civ. A. No. 74–71–C5.**

United States District Court, D. Kansas.

April 30, 1975.

Harold H. Crook, Pittsburg, Kan., for plaintiff.

Robert J. Roth, U. S. Atty., Roger K. Weatherby, Asst. U. S. Atty., for defendant.

## MEMORANDUM OF DECISION

TEMPLAR, Senior District Judge.

This is an action brought by plaintiff under Section 201 of the Social Security Act, as amended. (42 U.S.C.A. § 401 et seq.) Section 405(g) provides for a judicial review of a "final decision" of the Secretary of Health, Education, and Welfare. Plaintiff contends that defendant erroneously denied plaintiff a period of disability as provided in Section 216(i), and disability benefits provided by Section 223. (42 U.S.C.A. § 416(i) and § 423 respectively.)

From the record it appears that plaintiff filed his application to establish a period of disability, as provided in Section 416(i), and to obtain disability insurance benefits, as provided by Section 423. The application was considered and reconsidered by the Social Security Administration and plaintiff's claim was denied.

Plaintiff requested a hearing and on October 16, 1973, a hearing was held at which time plaintiff was represented by counsel and at which hearing evidence was offered by his witnesses.

Thereafter, on February 5, 1974, the Administrative Law Judge rendered a decision unfavorable to plaintiff and found that plaintiff was not under disability as defined in the Social Security Act, as amended. Then, on March 25, 1974, the Appeals Council of the Social Security Administration affirmed the decision of the Secretary.

Plaintiff asserts that the issues presented are:

1. The Secretary's decision is not supported by substantial evidence.

2. The Secretary failed to establish by medical evidence the kind or type of substantial gainful activity which

plaintiff may be physically able to engage in, if any.

3. The Secretary failed to establish the availability of any work in the community that plaintiff could do.

■ There is in the record much evidence to indicate that plaintiff suffers from substantial disability. The fact that he has met the requirements for disability under a private insurance contract and is likewise receiving 100% disability benefits from the Veterans Administration would be persuasive of the fact of disability. Though such determinations have been made by plaintiff's insurance carrier and the Veterans Administration, such determinations do not bind the defendant here or require a finding of disability under the rigid provisions of the Social Security Act, as amended. However, the fact that plaintiff receives 100% disability from the Veterans Administration is a factor to be considered. *Skeels v. Richardson*, 453 F.2d 882 (5th Cir.). Likewise, the payment of disability benefits by an insurance company to plaintiff, while not conclusive, is entitled to weight insofar as it was supported by objective medical evidence. *Moon v. Celebrezze*, 340 F.2d 926 (7th Cir.). While the Administrative Law Judge in his Hearing Decision states that he carefully considered all the evidence, I fail to find any reference in his decision, including his evaluation of the evidence, which indicates that he gave any consideration whatever to these two important factors. Nor is it indicated what weight was given to these important facts. While it is true that the defendant is not bound by such determinations because different standards for establishing disability exist under insurance contracts and Veterans Administration rules, still, since the evidence is not alluded to in any way, the inference would appear that the evidence was not considered at all.

There can be no doubt that plaintiff is no longer able to perform work as a truck driver or any other type of work requiring lifting, walking, stooping or carrying 60 pounds or more. This was the kind of work in which he had been engaged prior to the time he became unable to work at any employment requiring physical exertion.

■ This having been shown, the burden then shifted to the Secretary to prove that there is some other kind of substantial gainful employment which claimant is able to perform. *Stark v. Weinberger*, 497 F.2d 1092 (7th Cir.); *Haskins v. Finch*, 307 F.Supp. 1272 (D.C.Mo.).

A summary of the record before the Court discloses that plaintiff was born July 21, 1925, that he attended grade school through a part of the seventh grade and received thereafter a GED Diploma after attending night school in Pittsburg during 1947. As a youngster, plaintiff worked at filling stations and motor companies cleaning up grease spots. He entered the military service at the age of 17 and served in the Shore Patrol. He was discharged from the service in 1946 and obtained work with the Blackwell Zinc Company as a laborer drawing lead and cleaning up. He had to quit this work after six months because it was too hot and smoky. Thereafter, he was self-employed as a truck driver from 1948 to 1950, working extra during that time for the Hudson Oil Company. He has never done any book work. During the years from 1950 to 1964, he had miscellaneous jobs as a truck driver and started in 1964 working for Yellow Transit as a truck driver at which employment he never did any loading or unloading. He was forced to quit this employment on account of his health in October, 1972, and failed to pass the required company physical examination on November 27, 1972. He was found by the examining physician, Dr. Chubb, M.D., to be disqualified for truck driving at that time by reason of severe dyspnea at rest, presumably due to emphysema. He also was found to have weakness of the repair of his left inguinal hernia, no demonstrable right

achilles reflex, an inability to perform the heel-to-knee test without falling. Other defects included marked nasal septal deviation to the right, with obstruction, and edentulism. Determinations of plaintiff's total disability by his insurance company and by the Veterans Administration were established.

The report dated February 23, 1973, of Dr. Erickson, a qualified physician, discloses that the doctor, on examination of plaintiff, found that there was hyperventilation on the least exertion, that the thorax moved normally upward and downward on inspiration, that there were no rales in the lungs and breath sounds were symmetrical, that his heart tones were good and there were no murmurs. His peripheral artery pulsations were good and there were bilateral varicosities of both legs. The gait, coordination and deep reflexes were normal and plaintiff had no increased sensitivity to pain in the soles of his feet. Blood gas studies were found to be within normal limits. The doctor's impression was plaintiff had chronic bronchitis, pulmonary fibrosis, moderately severe impairment of respiratory function.

Plaintiff was referred by Dr. Erickson to Dr. Berkey, a specialist in radiology for X-rays. A report dated February 15, 1973, by Dr. Berkey stated that there was minimal fibrous tissue increasing markings but no signs of active pulmonary disease. The roentgen impression was pulmonary emphysema and minimal to moderate pulmonary fibrosis.

Dr. Lyons, a general practitioner with some experience in surgery, first examined plaintiff in October, 1972, when plaintiff had complaints of shortness of breath on exertion and that plaintiff's condition had grown much worse in spite of treatment, that breath sounds were diminished throughout both lung fields. A chest X-ray taken March 22, 1972, showed hyperaeration of both lung fields but no active lung disease. His diagnosis was severe and disabling emphysema. The doctor testified he had examined plaintiff two days before the hearing and that his emphysema was severe, that he thought plaintiff could do a sedentary type of work which did not involve walking.

Plaintiff testified that he is 5′ 10″ tall and weighed about 146 pounds. He said his weight had always remained fairly constant.

Plaintiff stated that his principal work had been as a truck driver for various companies. He also held a job in 1946 for 3 or 4 months at a zinc company drawing lead. This involved working near the fire banks and hot skillets and plaintiff stated he could not stay there because of the heat and smoke. Therefore, plaintiff became a laborer on cleanup and worked about 6 months in the same plant. Plaintiff stated that he had no trouble with emphysema at that time or while he was in the army for 3 years from 1943 to 1946. He left the service because of a disability described as varicose veins. He forfeited the disability when he got out and didn't file again until 1961.

In 1948 plaintiff became self-employed as a coal hauler. This work lasted for a couple of years. During the same period plaintiff also worked extra for Hudson Oil Company. In 1964, plaintiff started to work for Yellow Transit and stayed there until a year prior to the hearing. At that time, he flunked his physical and was forced to quit.

Plaintiff stated that he first began having trouble with his breathing when he was off work during August and September of 1972 for treatment of his feet. The breathing condition makes it difficult for him to sleep regularly. He walks very little and sits around most of the day. Plaintiff likes to read a lot but stated that he doesn't always understand what he reads. Plaintiff states that besides his breathing problem, the only other problem he has consists of varicose veins and pain in his feet. He said that he can hardly walk because of the pain in his feet reportedly caused by neuritis nerve damage.

Plaintiff's wife, Faye Thomas, testified at the hearing that she has been married to plaintiff for 25 years. Plaintiff stated that he can hardly breathe at night. She felt that his condition is the worst in the mornings when he first gets up and seems to get a little better after 2 or 3 hours. She added that in her opinion his condition has grown worse in the last year.

The respondent produced as a witness Dr. Ronald Rice, a psychologist with a Ph.D. in counseling, who appeared as a vocational expert and testified that he had listened to all the testimony and had reviewed all the evidence and had observed the plaintiff during the hearing. He further testified that he is self-employed as a counseling psychologist in Springfield, Missouri, and does a great deal of evaluation regarding vocational rehabilitation. Before testifying, the expert inquired as to the plaintiff's educational background and experience in making change. The plaintiff answered that he had completed one semester of 7th grade but later received his GED at night school in 1946 or 1947. Plaintiff also stated that he made change while working as a filling station attendant.

He stated that he would classify most of plaintiff's prior work except at Yellow Transit as heavy work. He classified plaintiff's work at Yellow Transit as a medium occupation since no loading and unloading of trucks was involved.

Based on a hypothesis that plaintiff could perform light manual labor and taking into account all the evidence, Dr. Rice stated that plaintiff could be a taxicab driver, delivery man, parking lot attendant, or chauffeur. Based on the plaintiff's limitations as set forth in the record, Dr. Rice stated that in his opinion plaintiff could not do medium type work. However, he felt sedentary type jobs other than bench work were within his capability based on the record. He added that such jobs exist and are being performed in the region in which plaintiff lives.

The administrative law judge found that plaintiff is unable to perform heavy manual labor or pursue his former occupation as an interstate transport truck driver but is able to otherwise function satisfactorily. Thus, the administrative law judge stated:

"Accordingly, it is concluded and found that the credible and probative record evidence, including the medical evidence, demonstrates convincingly that at least since October 15, 1972, and continuously through the date of this hearing, the said claimant, F. C. Thomas, has not suffered from any combination of impairments of a sufficient degree of severity to prevent him from engagin [sic] in all gainful activity. It is found that he could, if motivated, engage in some moderate, light, or sedentary work in which he already has some experience or for which he would have some transferable skills."

This Court has on previous occasions reviewed final decisions of the defendant and recognizes that the judicial review under the statutory provisions is a well-defined and limited one. As the Court pointed out in *Branch v. Finch,* 313 F.Supp. 337 (D.C.Kan.1970), the findings of fact by the Secretary and the inferences drawn from such findings should not be disturbed by a reviewing court, "if there is substantial evidence to support them. Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Stated in a different manner the evidence must be such, if the trial were to a jury, as would justify a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.

The primary issue before this Court is whether or not there is substantial evidence to support the Secretary's decision that plaintiff was not entitled to a period of disability or to disability insurance benefits and specifically whether plaintiff has been unable to

engage in substantial gainful activity by reason of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.

The definition of disability set forth in § 423(d)(1) provides:

"(d)(1) The term 'disability' means—

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."

"(2) For purposes of paragraph (1) (A)—

(A) an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . . ."

\*  \*  \*  \*  \*  \*

"(3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

\*  \*  \*  .\*  \*  \*

"(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."

The plaintiff attacks the findings and conclusions of the administrative law judge, affirmed by the Appeals Council of the Social Security Administration as not being supported by substantial evidence. Plaintiff argues that the administrative judge did not ask the vocational expert, Dr. Rice, on whose testimony the judge based his findings, a proper hypothetical question since the vocational expert was instructed by the judge to consider only jogs based upon plaintiff's age, education and significant vocational characteristics of the jobs he had done and that the vocational expert's reply completely disregard any medical conditions. Plaintiff contends that the judge at this point had concluded that plaintiff was capable of doing "light work" since he specifically excluded disabilities and impairments in his hypothetical question to the vocational expert, Dr. Rice.

As noted, where a claimant makes a case of his inability to return to his former employment because of his physical impairments, the burden of going forward with evidence and of persuasion shifts to the Secretary to prove that suitable employment for claimant existed and was reasonably available to claimant.

Defendant's effort to establish plaintiff's capacity and ability to perform suitable employment rested upon the testimony of Dr. Rice, described above. The opinion of this witness is unsound because, among other reasons, he was told in the hypothetical question submitted to him that, "You don't need to concern yourself now with his disfunctions or his physical impairments," and then the hypothetical question continues, "Would there be any jobs based upon his age, education, experience and his vocational—significant vocational characteristics of the jobs that he has done— would there be any jobs in the region that he could perform?"

The witness's answer to that question illuminates the defect in the proof, for his answer was:

"A. Disregarding any medical conditions, yes there are."

So, disregarding medical conditions, the witness struggled to find some occupation plaintiff would be able to do (disregarding any medical conditions). He had some difficulty with this.

The witness had some problems in finding such an occupation. As a taxi driver, admittedly plaintiff could not handle heavy luggage that would be required, the same condition would eliminate the practicability of working as a delivery man, and the witness had difficulty in defining any job plaintiff might be able to perform. The following questions to the witness and his answers demonstrate that there is no evidence in the record sufficient to support the finding that:

"Considering the claimant's residual physical capacity and his vocational background, he is able to perform jobs which are present in significant numbers in the region where he lives; e. g., he is able to perform jobs such as taxi-cab driver, dispatcher, deliveryman for light merchandise, parking attendant, chauffeur, forklift operator, or other in-plant vehicle deliveryman."

The record is conclusive that the vocational expert's opinion was not based on any of the medical evidence in the record, but rather on "hypotheticals" posed by the administrative law judge who skillfully skirted the very important factor of plaintiff's inability to stand on his feet for any length of time or even walk without suffering from pain and discomfort and shortness of breath. The testimony of Dr. Lyons, a witness, disclosed that plaintiff "runs out of gas, so to speak, with the slightest exertion, just like walking or in ordinary walking."

This condition is not disputed. Even the administrative judge felt constrained to record that, "It does not appear that claimant was seriously exaggerating his symptoms. He appeared to be short of breath, which condition was audible."

Undoubtedly, since the administrative judge could observe the audible condition, it is not surprising that he asked the vocational expert, Dr. Rice, to disregard the medical conditions of plaintiff. Dr. Rice testified that he had been in attendance throughout the hearing and must have also observed the physical condition of plaintiff. With the limitations placed on him when his opinion was hypothetically sought, omitting a most important factor, Dr. Rice exhibited some reluctance in giving the judge the answer he wanted, as a reading of the transcript will disclose. (Tr. 63–69.) The point here is best illustrated by the last question submitted to the witness Rice (Tr. 69) by the administrative judge and the answer of the witness.

"Q. Then, if based upon the hypothesis that with this man's age education background that hypothetically he would be able to perform those jobs, is that correct?

"A. Yes, sir."

The questions and answers preceding the above disclose that the witness was only answering the questions as to the availability of employment based upon the hypothesis presented to him and was not stating whether or not the plaintiff could obtain a job, even if one exists.

In that connection, this Court believes that plaintiff's physical condition, a most important factor, was omitted from the consideration by the vocational expert when his opinion was sought as to whether plaintiff was able to engage in any substantial gainful employment. Thus, the evidence in the record does not support the finding of the administrative judge that plaintiff is able to perform jobs which are present in significant numbers in the region where he lives. As the Court of Appeals for the Tenth Circuit said in *Gardner v. Brian*, 369 F.2d 443 (10 Cir.), "in determining whether a particular applicant is unable to engage in any substantial gainful activity, i. e. what he can do and *what*

*is available to him to do,* consideration must be given to his age, education, training, experience *and mental and physical capabilities."* (Emphasis supplied.)

Perhaps the best discussion of this issue is found in *Sayers v. Gardner,* 380 F.2d 940, 23 A.L.R.3rd 1014 (6 Cir.) where the court said at pp. 950–951, 23 A.L.R.3rd pp. 1027–1028:

" 'We conclude that the Secretary failed to employ the proper legal standards in making his determination of the claimant's disability. There should have been a determination by the Secretary of whether or not the claimant's physical or mental impairment would prevent him from being hired to fill jobs, if such jobs were open in the area in which the claimant could reasonably be expected to compete. *If the hiring practices and policies of employers will not permit the employment of a man, who because of an impairment could not "carry his load," then he must be considered disabled.'* (Emphasis supplied.)

"In *Gardner v. Brian,* 369 F.2d 443, 447 (C.A.10), the court said:

'The consultant also recognized the claimant's problem of gaining access to companies which would be involved in pension plans and insurance plans and that more and more this is becoming a handicap to the worker in the post 50's and particularly those that have some kind of limitation. Indeed, the Fifth Circuit in *Gardner v. Smith,* 368 F.2d 77, (C.A.5), again recognized this availability problem with the observation that disability includes physical or mental impairment which not only prevents one from obtaining a job, but from even being considered for it by reason of hiring practices and policies.'

"See to same effect *Bridges v. Gardner,* 5 Cir., 368 F.2d 86.

"In *Thomas v. Celebrezze,* 331 F.2d 541, 546 (C.A.5), the court emphasized the desirability of having the Secre-

tary focus on the question of disability from the standpoint of an employer; and, in holding that the claimant in that case could not reasonably hope to be hired, said:

'Employers are concerned with substantial capacity, psychological stability, and steady attendance; they will not unduly risk increasing their health and liability insurance costs. It is unrealistic to think that they would hire anyone with the impairments of this claimant.' "

The record in this case reveals that without question, plaintiff is unable to pursue his former occupation. Such is conceded.

The evidence on which the administrative judge relied to establish plaintiff's ability to perform jobs which are present in significant numbers in the region where plaintiff lives is insufficient and unsubstantial to support such a finding and such finding is, therefore, vacated and set aside as being unsupported by substantial evidence. It is not supported by any credible evidence at all.

Likewise, the Court must conclude that the finding of the administrative judge that plaintiff is not under disability is clearly erroneous and contrary to the evidence. There is no showing that there is a reasonable availability of jobs which this plaintiff is capable of performing; quite to the contrary, the evidence is overwhelming that plaintiff is not employable. The administrative judge apparently gave no consideration to the fact that plaintiff is rated as 100% disabled by the Veterans Administration, nor to the fact that his private insurer determined him to be totally and permanently disabled. Though not conclusive of the issue, these determinations should have been considered.

The final decision of the Secretary denying plaintiff benefits provided under provisions of the Social Security Act is reversed, and the motion of defendant for summary judgment is de-

nied, while the motion of plaintiff for summary judgment is sustained.

Plaintiff's counsel will prepare, circulate and submit form of judgment to be entered by the Court consistent with the foregoing Findings and Conclusions of the Court.