Hermione KING, a Feme Sole, Plaintiff-Appellant,

v.

Robert H. FINCH, Secretary of Health, Education and Welfare, Defendant-Appellee.

No. 28247

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

June 16, 1970.

William A. Barber, Jr., Grand Prairie, Tex., for plaintiff-appellant.

Richard Brooks Hardee, U. S. Atty., Tyler, Tex., Kathryn H. Baldwin, Atty., U. S. Dept. of Justice, Washington, D. C., for defendant-appellee.

Before THORNBERRY, CLARK and INGRAHAM, Circuit Judges.

THORNBERRY, Circuit Judge:

This is an appeal from a denial of disability benefits under the Social Security Act.[1] It has a lengthy procedural history. Appellant Hermione King first filed her application in 1963, and the hearing examiner found that she was not entitled to benefits. The appeals council upheld this determination. The district court similarly upheld the denial. Upon appeal, this Court reversed the case and remanded it for further consideration of the question whether appellant's medical impairments would prevent her from being hired even if she were able to work. The Court then granted a request for rehearing en banc, and in 1967, while the case was in this posture, Congress amended the Social Security law. The newly amended law makes it absolutely clear that the consideration whether an applicant would be hired is irrelevant. The Congress also made the law applicable to cases then pending for judicial determination, and this Court therefore remanded the case

---

1. Pursuant to our Local Rule 18 we decide this case on the briefs and record.

to the Secretary for consideration in light of the new amendments.[2]

Upon a new hearing, the Secretary's examiner again denied benefits, and both the appeals council and the district court affirmed the denial. On this appeal, appellant·brings three arguments before the Court: First, that the Secretary's decision is not supported by substantial evidence; second, that application of the 1967 amendments to pending cases is unconstitutional in that it violates the separation of powers doctrine implied by Article III; and third, that application of the 1967 amendments to pending cases is a taking of property without due process in violation of the fifth amendment to the Constitution. We take up. the issues in this order. Because we find that there was substantial evidence before the examiner, and because we hold that the amendments may properly be applied to appellant, we affirm the denial of benefits.

## I. SUBSTANTIAL EVIDENCE

Under the 1967 amendments, it is now clear that the standard for disability is a stringent one. An applicant must be unable to engage in "any * * * substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." [3] Before the passage of this amendment, the courts tended to read the disability standard far more broadly. Judge Wisdom, in dissenting from the prior decision of this Court, said, "This case is one of a lengthening line of cases which, to my mind, frustrates the will of Congress by converting the disability insurance provisions of the Social Security Act into an unemployment compensation law." Commentators, several of whom are cited in Judge Wisdom's dissent, have vigorously criticized broad interpretation of the disability provision as a frustration of the will of Congress. At this juncture, with the 1967 amendments before us, it cannot be asserted that the Secretary was required to show that some job exists for which appellant would be hired. The burden is upon appellant to prove disability, and if there is substantial evidence that jobs exist in the economy that appellant could perform, the Secretary's decision must be affirmed. Thus the standard is not inability to be hired but complete inability to work, to perform any substantial gainful activity. It is under this law that we must review the evidence to see whether it is substantial.

The evidence concerning appellant's disability is in conflict. Appellant's postman, pastor, and county sheriff all testified that she had been weak and sickly since she was a child and that she was unable to do any work, no matter how light. A few medical reports on appellant are to the same effect. Appellant herself testified as to the symptoms she displayed, and from all the medical evidence there can be no doubt that she had a heart condition. However, the credible evidence of medical examinations by five doctors indicates that appellant is not unable to engage in any substantial gainful activity as a result of her condition. None of these doctors placed any significant restrictions upon appellant. One of the doctors indicated that the primary cause of appellant's difficulties was that she smoked despite her condition and allowed herself to become obese. A vocational expert testified as to a wide variety of specific jobs available in the economy that a person of appellant's physical condition could perform. We need not, and in fact we may not, decide how we would view this evidence if it were before us in an original proceeding. A fair-minded person might reasonably come to the conclusion that appellant did not meet the disability standard, and therefore we must hold that substantial evidence supports the

2. The opinion of the Court, Judge Wisdom's dissenting opinion, and the disposition of the case by the Court *en banc* are all reported sub nom. King v. Gardner, 5th Cir. 1967, 391 F.2d 401.

3. 42 U.S.C. § 423(d) (1969).

Secretary's decision to deny Social Security benefits. We now pass on to consider whether the application of this standard to appellant's case is constitutional.

## II. THE CONSTITUTIONAL QUESTIONS

Appellant challenges the application of the 1967 amendments to the case on two constitutional grounds. Her first attack is procedural. She argues that applying the amendments to pending cases is a Congressional interference with the power of the judiciary to decide the cases brought before it and hence a violation of the separation of powers doctrine implied by Article III. This argument spills over into questions of procedural due process, for another way to express appellant's argument is that the change deprived the court of the power to decide her claim in accordance with applicable law. Appellant's second point concerns substantive rights. She argues that application of the amendments to her pending case effects a defeasance of vested rights sufficient to invoke the fifth amendment prohibition against governmental taking of property without due process of law. Neither of these questions involves absolute answers, and notwithstanding the argument of the Secretary we are unable to say that either is entirely frivolous, although we decide both questions against appellant on the facts of this case.

### A. *Separation of Powers and Procedural Due Process*

■ Quite naturally, appellant does not accept the 1967 amendments as gracefully as does the Secretary. In her view,

the judicial power of the United States had "extended" to protect the rights she had under existing legislation at the time she originally filed her suit. The Court originally interpreted the language of that legislation in such a manner that it decided the case favorably to appellant. Thereupon, as appellant sees the case, the Congress changed the law in midstream because it did not approve of the manner in which the judiciary was functioning, and the result is an unconstitutional interference with the judicial power. Section 1 of Article III of the Constitution states that "The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." Section 2 states that "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties * * *." This language is part of the basis for the frequently stated proposition that ours is a government of checks and balances.

■ It should be expected that a government of checks and balances will create some conflicts. Exasperation with the conduct of one branch that frustrates the designs of another has been a frequent state of mind in our national history, and it will probably continue to recur in the future. Some of the most fundamental decisions of the federal courts have concerned conflicts, and particularly the scope of the judicial power. *E.g.* Marbury v. Madison, 1803, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60; Martin v. Hunter's Lessee, 1816, 14 U.S. (1 Wheat) 304, 4 L.Ed. 97.[4] As Mr.

---

4. Another decision, Ex parte McCardle, 1868, 74 U.S. (7 Wall.) 506, 19 L.Ed. 264, also concerns the scope of the judicial power and seems on its face to relate to the problem before us. In that case, Congress curtailed the appellate jurisdiction of the Supreme Court over certain habeas corpus petitions, those arising under the Judiciary Act of 1867. The curtailment was applied to a pending case. The apparent motive of Congress was to prevent the Supreme Court from passing on the Reconstruction Acts. *See* C. McCormick, J. Chadbourn, & C. Wright, Federal Courts: Cases and Materials 781 n. 70 (1962). We do not base our decision on *McCardle*, however, for two reasons: First, there is some question as to the continuing vitality of *McCardle* as respects the power of Congress to make fundamental changes in the role of the federal judiciary. *See* C. Wright, Federal Courts, § 10 & n. 7 (1970). Second, the Act at issue in *McCardle* foreclosed

Chief Justice Marshall stated in Marbury v. Madison, "It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule. If two laws conflict with each other, the courts must decide on the operation of each." It follows, as Marbury v. Madison shows, that any attempt to expand or contract the judicial power, except within constitutional bounds, should be held ineffective by the courts.

■ At the same time, it is equally emphatically the province of the Congress to make and change the law, within constitutional limits. One of these limits is met at the interface with the judicial power, but in the overwhelming number of cases the legislative power is properly exercised and should be respected. In this case, the Congress has exercised its power to change the substantive rights of the appellant. It is clear that strong considerations of public policy militate in favor of the change, both as to cases not yet filed and as to pending cases, because expansion of the class of persons entitled to benefits under the earlier interpretation of the law placed in jeopardy the ability of the government to administer the entire Social Security program. The number of cases both pending and anticipated that depend upon the language at issue here is substantial. The interpretation of the law that we have now followed seems to have been necessary to permit increases in benefits to persons Congress thought needed them badly. *See* 113 Cong.Rec. 16855 (1967) (remarks of Congressman Mills); *see generally* King v. Gardner, 5th Cir. 1967, 391 F.2d 401, 405–410 (dissenting opinion of Judge Wisdom).

■ Thus the Congress has changed the law, but we cannot agree with appellant that it has interfered with the judicial power. The legislation at issue affects appellant's rights (and coinci-

dentally the rights of numerous other recipients of benefits) but not the power of the federal courts to adjudicate those rights. The Court has been able to hear and decide appellant's arguments based upon substantial evidence, separation of powers, and due process; we need not decide what the result would have been had the ability of the federal courts to decide such questions been impaired. We must reject the argument that a law that does not affect the composition, nature, jurisdiction or even procedure of the courts, but only affects the substantive rights of a litigant, violates the separation of powers under the facts of this case.

■ We do not dispense with the possibility that there might be a case in which the application of new standards or procedures to pending cases might interfere with the judicial power as it was created by the Constitution. It is clear, for example, that a sudden change in procedure may constitute a denial of due process. *See* National Ass'n for Advancement of Colored People v. Alabama, 1958, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488. It is also possible for a court to be so constituted that its ability to render justice is impaired to the extent that it violates due process by merely functioning under its procedures. See Hulett v. Julian, M.D.Ala. 1966, 250 F.Supp. 208, 209; In re Reis, R.I.Fam.Ct.1970, 7 Crim.L.Rep. 2151 (Juvenile court, required under Rhode Island law to investigate as well as decide cases, holds own procedures unconstitutional). Suffice it to say, this is not such a case. Neither separation of powers nor procedural due process has been violated under these facts. We now pass on to consider appellant's second constitutional point.

**B. *Substantive Due Process***

■ Appellant's next argument is that application of the 1967 amendments to her pending case deprives her of prop-

only one avenue of approach to the Supreme Court, that of appeal as distinguished from certiorari, and thus it pre-

sents a different question from this case, in which appellant's substantive rights are directly changed.

erty without due process of law, in violation of the fifth amendment. The question whether there is a "right" to these benefits, let alone a "property" right, is an almost meaningless one taken out of context. There are, for example, broad equal protection limits on the denial of Social Security benefits, and similarly there are limits on the power of government to deny benefits without proper procedures. Goldberg v. Kelly, 1970, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287. The *Kelly* Court states that for purposes of its decision "It may be realistic today to regard welfare entitlements as more like 'property' than a 'gratuity.' " *Id.* at n. 8. On the other hand, "The Constitution does not empower this Court to second-guess * * * officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients." Dandridge v. Williams, 1970, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491. The collective meaning of these decisions is that entitlement of an individual to benefits attaches at some point in the award process, after which there is a right that cannot be infringed but by due process or just compensation, but until that time the underlying substantive decision whether a given class of persons should receive benefits remains with the legislature subject to equal protection limits.

We do not think that either the passage by Congress of a statute that this Court found ambiguous enough to read as it did on the prior appeal to this Court, or the prior decision itself, established such a property right as to bar Congress from clarifying that law. Entitlement to these benefits has always been held not to create a vested property right before adjudication or payment. Flemming v. Nestor, 1960, 363 U.S. 603, 608, 80 S.Ct. 1367, 1371, 4 L.Ed.2d 1435. The mere fact that the Act of Congress at issue here relates, as does the decision of this Court, to rights that might have attached in the past had they been awarded under a particular interpretation does not debase this Act of Congress to the status of a fifth amendment violation. As the Court said in *Nestor*, "To engraft upon the Social Security system a concept of 'accrued property rights' would deprive it of the flexibility and boldness in adjustment to everchanging conditions which it demands. * * * We must conclude that a person covered by the Act has not such a right in benefit payments as would make every defeasance of 'accrued' interests violative of the Due Process Clause of the Fifth Amendment." 363 U.S. at 610, 80 S.Ct. at 1372–1373. In this case, wherein entitlement was never evidenced by payment, and indeed was never adjudicated in appellant's favor, we must hold that the 1967 amendments did not deprive her of property rights without due process.

Affirmed.