Julius B. REEVES, Jr., Plaintiff,

v.

David MATHEWS, etc., Defendant.

No. CIV-2-76-78.

United States District Court,
E. D. Tennessee,
Northeastern Division.

Memorandum Opinion Feb. 2, 1977.

On Motion for Attorney's Fees
March 16, 1977.

On Motion To Amend June 7, 1977.

**420**

John L. Kiener, Cantor, Kiener & Bowman, Johnson City, Tenn., for plaintiff.

John L. Bowers, U. S. Atty. by Edward E. Wilson, Asst. U. S. Atty., Knoxville, Tenn., for defendant.

## MEMORANDUM OPINION

NEESE, District Judge.

This is an action for the judicial review of the final decision of the defendant administrator, 42 U.S.C. § 405(g), denying the plaintiff's claim for disability health insurance benefits under the Social Security Act. 42 U.S.C. §§ 416(i), 423. The plaintiff moved for a summary judgment. Rule 56(a), Federal Rules of Civil Procedure. By order herein of November 4, 1976, the defendant was allowed 20 days in which to respond to such motion by the plaintiff, such failure to be deemed a waiver of any opposition thereto. No such response was made by the defendant.

The plaintiff filed an application for these benefits on December 27, 1973, alleging that he first became unable to engage in substantial work on December 28, 1970 due to "* * * heart condition, loss of use of legs. * * *" That claim was denied initially and on reconsideration. An administrative law judge also denied the application on November 21, 1975. This became the final decision of the defendant Secretary when an appeals council, after considering additional evidence, approved that denial.

The administrative law judge found, *inter alia*:

\* \* \* \* \* \*

1. The [plaintiff] last met the specific earnings requirements of the Act on September 30, 1975.

\* \* \* \* \* \*

6. The [plaintiff's] impairments preclude him from engaging in his former work as a clothing department manager. They also preclude him from work activities requiring more than light and sedentary labor, in dusty atmospheres or where other pulmonary or bronchial irritants are present, where undue work pressures are present, in jobs entailing the use of foot controls, or in work activities involving stooping, bending, squatting, climbing, or any significant amount of walking. He should also be able to sit or stand, at his own option, and move about his work area.

7. The medical evidence does not show that the [plaintiff] is suffering from any other impairment which would impose any significant limitation on his vocational functional ability other than those set forth in Finding No. 6 hereof.

8. The [plaintiff], in spite of his impairments, retains the capacity to engage in substantial gainful work activities of a light and sedentary nature.

9. The testimony of the vocational witness shows that jobs of a light and sedentary nature (security type personnel), which are within the [plaintiff's] vocational functional abilities, exist in significant numbers in several regions of the country.

 \* \* \* \* \* \*

 Such findings by the Secretary are conclusive if they are supported by substantial evidence in this record. *Wokojance v. Weinberger*, C.A. 6th (1975), 513 F. (2d) 210, 212[3]. This Court may only determine whether the Secretary's decision is based upon such evidence. *LeMaster v. Weinberger*, C.A. 6th (1976), 533 F. (2d) 337, 339[1]; *Ingram v. Richardson*, C.A. 6th (1972), 471 F. (2d) 1268, 1271[4]. " \* \* \* We have defined 'substantial evidence' as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' *Consolidated Edison Co. v. Labor Board* [1938], 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126. '[I]t must be enough to justi-

fy, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' *Labor Board v. Columbian Enameling & Stamping Co.* [1939], 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660, 665. \* \* \* " *Consolo v. Federal Maritime Com.* (1966), 383 U.S. 607, 619–620, 86 S.Ct. 1018, 16 L.Ed.2d 131, 140–141[9]. Applying these criteria, there is not substantial evidence in this record to support the findings of the Secretary that the plaintiff was not under a disability on or before September 30, 1975, when he was last insured for disability purposes under the aforecited act.

The plaintiff's medical history indicates that both of his legs were injured during his tenure in the armed services. He was treated at various veterans administration hospitals during the past several years. On December 10, 1973, Dr. G. C. Shingleton, of the Veterans Administration domiciliary at Mountain Home, Tennessee, diagnosed the plaintiff as suffering from post-coronary occlusion (by medical history), emphysema, fused right ankle, chronic alcoholism, and an unstable left knee. In January, 1974, his heart condition and leg difficulties were again noted medically, but it was recommended that he resume his previous duty assignments.

Mr. Reeves was admitted to a similar domiciliary in Columbia, South Carolina, on August 12, 1974; thereafter, he was discharged and returned to light work. After such discharge, the plaintiff sought and gained admission to the Mountain Home installation. The previous diagnoses of his condition remained constant. Dr. Hugh F. Swingle, a surgeon, diagnosed basically the same ailments on September 30, 1974. Dr. A. D. Doak, a general practitioner on the staff of the Mountain Home hospital, stated on May 22, 1975 that EKGs and subsequent objective studies failed to reveal the evidence of coronary thrombosis and, thereafter, considered the previous diagnosis of post-coronary thrombosis was incorrect.

After the administrative denial of his claim, Mr. Reeves received a hearing before an administrative law judge on August 12,

1975.* Mr. Reeves testified thereat that he was a full-time resident at the Mountain Home domiciliary. He testified further that he had completed one year of college and had taken specialized training as a web pressman in the printing industry. He had been employed with various printing companies and also had owned and operated vending machines. Mr. Reeves later managed the men's-and-boy's-clothing department of a store, where he supervised from 15 to 40 persons. The plaintiff further related that he had last worked for a period of approximately one month in November, 1972 at a clothing store, but had to resign because of the physical strain involved. There was no escalator or elevator in the building where he worked. This required him to walk-up flights of stairs, which became too much of a strain. He could not state positively whether he would have been able to continue his job if there had been an escalator or elevator in such store.

The plaintiff testified that he could walk only about 2½ blocks before his left knee became so painful that any further movement was restricted. Also, any exertion or excitement caused him chest pains. Prior to his last admission at the veterans administration hospital, he worked in an administrative office for approximately 4-to-6 hours a day, answering the telephone and performing filing duties. Mr. Reeves is able to drive an automobile, and he has a valid driver's license. He does not like the regimentation or the environment at the domiciliary where he presently resides.

Dr. Norman E. Hankins, a teacher in the psychology department at East Tennessee State University, was called as a vocational expert to give his opinion regarding any work Mr. Reeves could do, in the light of his impairments and functional limitations, and further what jobs existed in the national economy for a person with Mr. Reeves' residual abilities or limitations. The administrative law judge asked Dr. Hankins to

assume, *inter alia*, that the plaintiff could climb a flight of stairs getting to and from work, that he could sit or stand at his own option at a work station on an alternative basis, and that he could move around at such work station. Dr. Hankins testified that, based upon such assumptions, in his opinion Mr. Reeves had the residual ability to perform work as a security guard in a small building adjacent to a plant. These duties include issuing passes or badges to visitors, checking the identification of employees, and obtaining signatures of persons entering the business premises. They also required an individual to communicate with personnel inside the plant by means of a telephone or radio. Dr. Hankins indicated that these jobs would permit sitting or standing and would require some moving around; however, they would not require a significant amount of walking. Within a 75-mile radius of Mr. Reeves' residence it was estimated that there might be less than 100 and no more than 200 of such jobs. This type of position was also available in other industrial regions of the country.

Independently of the first assumption hereinabove, Dr. Hankins was next asked whether, if the plaintiff's combined impairments created his inability to tolerate an 8-hour workday on a regular and sustained basis, he could perform any jobs in the economy. It was this expert's opinion that, making that second assumption, no jobs are available which Mr. Reeves could perform.

The administrative law judge in his opinion related in detail Mr. Reeves' vocational background as well as the physical problems elicited from his medical history. Therefrom, he concluded that the plaintiff's impairments were of such a level of severity as to preclude his returning to his former vocational pursuit as a clothing department manager. Furthermore, he found that Mr. Reeves' impairments, considered separately or in combination, had not reached the disa-

---

* Mr. Reeves' claim had been dismissed for his failure to appear at a scheduled hearing. However, after an action was commenced in this Court, a stipulation was entered between Mr. Reeves and the (then) Secretary that the action would be dismissed without prejudice, because the bureau of hearings and appeals was to grant the plaintiff a hearing in this matter. This stipulation was filed on March 7, 1975.

bling level of severity which prevented his engaging in other substantial gainful employment. He recounted that the vocational expert had been asked to assume that the plaintiff could not lift objects weighing more than 8 pounds; that he could not perform work requiring stooping, bending, squatting, climbing or walking; that he could not perform work requiring the use of foot controls; that he could not be permitted to sit or stand at a work station at his own option; that he should not be subjected to undue work pressure; and that he should not work in a dusty atmosphere or where other pulmonary or bronchial irritants are present.

The administrative law judge then stated that, based on these assumptions, the vocational expert opined that the plaintiff had the residual ability to perform duties related to security type work at the entrances of plants and industrial establishments. Based on all the evidence adduced, the administrative law judge concluded that there were jobs that existed in significant numbers in several regions of the country that Mr. Reeves could perform and, therefore, that he was not disabled within the meaning of the Social Security Act.

On administrative appeal, the appeals council reviewed the decision of the administrative law judge as well as additional evidence, including a report of Dr. W. K. Wood of York, South Carolina. Dr. Wood had seen the plaintiff on various occasions and stated his opinion to a reasonable degree of medical certainty that Mr. Reeves had a permanent partial impairment. Dr. Wood further opined that Mr. Reeves was possibly totally impaired due to his cardiac condition, but that this could only be determined definitely from a cardiac-stress test. The appeals council was also furnished with a report dated March 11, 1976 from the plaintiff's physician, Dr. John M. Pratt, to the Prudential Insurance Company. Dr. Pratt had stated therein that the plaintiff remained totally impaired. The appeals council affirmed the decision of the administrative law judge on May 20, 1976.

In the instant case, the administrative law judge found that Mr. Reeves was unable to perform his regular vocation. " * * * The burden then shift[ed] to the Secretary to produce evidence that will justify a finding that there is available some other kind of 'substantial gainful employment' [the plaintiff] [wa]s able to perform. * * * " *Garrett v. Finch,* C.A. 6th (1970), 436 F.2d 15, 18[2]; *accord: Noe v. Weinberger,* C.A. 6th (1975), 512 F.2d 588, 595 [1]; *Gray v. Weinberger,* C.A. 6th (1970), 427 F.2d 336, 338[2, 3].

The Secretary sought to carry this burden by producing a vocational expert who testified that, in his opinion, the plaintiff was capable of performing security-type work. However, in order to arrive at this opinion, the vocational expert was required to make several assumptions, including assumptions that Mr. Reeves could negotiate a staircase getting to and from work; that he was able to sit or stand at his own option at a work station; and that, while at such work-station he could move-about. However, if the plaintiff were not able to perform an 8-hour workday on a continuous basis, it was the vocational expert's opinion that there were no jobs available in the economy which Mr. Reeves could perform. The plaintiff had testified previously that he was unable to stand for more than 10 to 15 minutes at a time without suffering considerable pain from his knee. When he sits for more than that period of time, his left leg becomes numb due to a brace on it. When he stands, a period of time is required before the circulation returns to normal.

The administrative law judge appeared to give some weight to the fact that personnel in the psychology service at the veterans administration center had mentioned that the plaintiff was able to perform night-desk duty at a motel. However, the letter from such service indicated that no such jobs were available in the immediate vicinity, and that this job required some experience. Mr. Reeves had no such experience. Such letter from Mr. Ralph McDaniel dated January 28, 1974 informed Mr. Reeves that all " * * * efforts toward [his] vocational

**424**

placement * * * were fruitless, * * * " and concluded that:

* * * * * *

In view of the facts that your Therapeutic Programming Board currently has assigned you to "bed and locker" (no duty), [that] you were hospitalized for heart ailments as late as last August and September, [that] you currently are prescribed nitroglycerine, and [that] your knee and leg continue to present problems, I feel our efforts toward job placement would be futile. I'm sorry I feel there is such little hope, but you * * * can live somewhat of a dignified existence in the domiciliary. I realize this is not your ideal as far as life is concerned, but frankly, I feel it's the best you can do under the circumstances. * * *

* * * * * *

It should be remembered that the defendant's own expert witness made no mention that motel employment was available to, or desirable for, the plaintiff.

■ In meeting his aforementioned burden of proof, the Secretary is not required to show that some job exists for which the plaintiff would actually be hired if he applied. *King v. Finch,* C.A. 5th (1970), 428 F.(2d) 709, 711[2–4]. However, the mere theoretical ability to engage in substantial gainful activity is not sufficient. *Mitchell v. Weinberger,* D.C.Kan. (1975), 404 F.Supp. 1213, 1219[9]. " * * * 'Employers are concerned with substantial capacity, psychological stability and steady attendance; they will not unduly risk increasing their health and liability insurance costs. It is unrealistic to think they would hire anyone with the impairments of this claimant.' * * * " *Dyer v. Richardson,* D.C.Tenn. (1972), 347 F.Supp. 478, 481[4], quoting from *Thomas v. Celebrezze,* C.A. 4th (1964), 331 F.2d 541, 546.

In summary, the administrative law judge and the appeals council have not considered fully the medical evidence available in this record. Furthermore, the vocational expert gave his opinion on the basis of a hypothetical question which failed to accu-

rately describe those impairments of the plaintiff as shown by the medical evidence herein.

Therefore, his opinion was insufficient to lend substantial support to the ultimate finding that the plaintiff was not disabled. *Campbell v. Richardson,* D.C.Tenn. (1972), 338 F.Supp. 1186, 1188[1]. It results that the Secretary has failed to meet his burden of showing that, despite his impairments, Mr. Reeves retains the residual capacity to engage in some form of substantial gainful employment.

■ The disability provisions of the aforecited act are not to be strictly construed to deny disability but liberally construed in favor of disability. *Davidson v. Gardner,* C.A. 6th (1966), 370 F.2d 803, 808[1]. Additionally, the defendant has elected not to respond to the motion by the plaintiff for a summary judgment, nor has he otherwise offered any argument in support of his final decision herein.

The findings of the Secretary, therefore, must be reversed. The pleadings and exhibits showing that there is no genuine issue as to any material fact, and that the plaintiff is entitled to a judgment as a matter of law, the plaintiff's motion for a summary judgment hereby is GRANTED. Rule 56(c), Federal Rules of Civil Procedure. Judgment will enter, reversing the final decision herein of the defendant Secretary and remanding this action to him with directions to award the plaintiff the benefits sought herein. Rule 58(1), Federal Rules of Civil Procedure.

### ON MOTION FOR ATTORNEY'S FEES

The defendant awarded the plaintiff past-due disability health insurance and supplemental security income benefits of $11,856.40 as a result of this Court's judgment of February 2, 1977. His attorney moved, in effect, for the Court to determine and allow as part of such judgment a reasonable fee for his representation. 42 U.S.C. § 406(b)(1).

Counsel submitted with such motion a detailed itemization of the time he devoted

to his representation herein and his expenses incurred in connection therewith. He devoted 33¾ hours to the task and incurred $22 in expenses.

" * * * A district judge must determine in each case whether the fee an attorney requests for representing a Social Security claimant * * * * is reasonable. * * * [W]hile the attorney's compensation must be sufficient to encourage members of the bar to undertake representation of disability [and supplemental security income benefits] claimants, the disability [and other] award, from which the attorney's fee is paid, is normally an already-inadequate stipend for the support and maintenance of the claimant and his dependents. Cf. *Redden v. Celebrezze,* 370 F.2d 373, 376 (4th Cir. 1966). While the district judge may consider the fact that a lawyer has taken a case on a contingent compensation basis, the judge may not unquestionably approve the award of the 25 percent maximum fee, or any other amount claimed on the basis of a contingent fee contract. Rather, in each case, the judge must assess the value of the lawyer's services to the claimant, as the judge observes those services in the judicial proceedings. * * * " *MacDonald v. Weinberger, supra,* 512 F.2d at 146–147[2], [3], [4].

■ Courts are responsible under the Social Security Act for seeing that unreasonably large fees are not charged or collected by lawyers; although lawyers are entitled to reasonable compensation for services rendered by them in judicial proceedings involving social security claims, these benefits are provided for the support and maintenance of the plaintiff and not for the enrichment of members of the bar. *Redden v. Celebrezze, supra,* 370 F.2d at 376[3], later appeal *sub nom. Redden v. Gardner,* 391 F.2d 670.

* In this circuit, it is held " * * * that the tribunal that ultimately upholds the claim for benefits is the only tribunal that can approve and certify payment of an attorney's fee, and that the fee cannot exceed 25% of the past-due benefits awarded by that tribunal. The tribunal making this award can consider all services

■ From all which the Court determines and allows John L. Kiener, Esq. compensation of $1,272, $22 of which is for reimbursement of reasonably-incurred expenses, and hereby CERTIFIES $1,272 for payment to such attorney out of, and not in addition to, the amount of past-due benefits paid or payable to the plaintiff. No other fee shall be payable for such representation. 42 U.S.C. § 406(b)(1). The judgment herein of February 2, 1977 hereby is AMENDED to reflect this determination and certification.

### ON MOTION TO AMEND

The Court determined and allowed as part of its judgment herein and certified for payment out of $11,856.40 in past-due benefits due the plaintiff the sum of $1,272 as a reasonable fee for the plaintiff's attorney for his representation herein. See memorandum opinion, order and certificate herein of March 16, 1977. On May 18, 1977, the defendant moved the Court to amend such determination and allowance, by certifying $1,250 for such payment. The motion lacks merit.

" * * * [T]he [C]ourt may determine and allow as part of its judgment [whenever it renders a judgment favorable to a claimant for disability insurance benefits under the Social Security Act] a reasonable fee for * * * representation [before the Court by an attorney], not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment. * * * " 42 U.S.C. § 406(b)(1). Obviously, $1,272 is " * * * not in excess of 25 percent * * * " of the total of past-due benefits of $11,856.40 to which the plaintiff was entitled herein by reason of this Court's judgment. The Court noted in determining and allowing an award of a fee for the plaintiff's attorney of record herein, that $22 thereof represent-

performed by the attorney from the time the claim was filed with the Social Security Administration. * * * " *Webb v. Richardson,* C.A. 6th (1972), 472 F.2d 529, 536[2]; *contra: MacDonald v. Weinberger,* C.A. 9th (1975), 512 F.2d 144, 146, n. 3.

ed the expenses that he incurred in representing the plaintiff before the Court. This was an appropriate consideration: " * * * an appropriate award in the District Court would be that portion * * * that the Court finds reasonably is attributable to the time the attorney spent *and the expenses he incurred* [emphases supplied] in representing [the plaintiff] before the District Court. * * * " *MacDonald v. Weinberger,* C.A. 9th (1975), 512 F.2d 144, 147, n. 5[7].

The defendant's motion hereby is DENIED, and he hereby is ORDERED to distribute forthwith * the sum of $2,964.10 he is withholding and report to this Court instanter how he has complied with its orders.

---

* The United States attorney of this district will cause notice of this requirement of the Court to be relayed to the office of the general counsel, United States Department of Health, Education and Welfare, Baltimore, Maryland, by telephone immediately upon receipt of a copy of this memorandum opinion and order.