Lawrence SPICER, Plaintiff,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.

No. 77–CV–260.

United States District Court, N. D. New York.

July 13, 1978.

Yanof & Schwartz, Ithaca, for plaintiff; Elizabeth Bixler Yanof, Ithaca, N. Y., of counsel.

George H. Lowe, U. S. Atty., Joseph Anthony Pavone, Asst. U. S. Atty., Syracuse, N. Y., for defendant.

MUNSON, District Judge.

## MEMORANDUM–DECISION AND ORDER

This action is brought pursuant to 42 U.S.C. § 405(g) to review a final decision of the Secretary of Health, Education and Welfare, denying plaintiff's claim for a period of disability and disability insurance benefits. 42 U.S.C. §§ 416(i), 423. Defendant moves for a judgment on the pleadings or, in the alternative, for summary judgment. Plaintiff cross-moves for summary judgment, and plaintiff's counsel seeks an award of attorney's fees pursuant to 42 U.S.C. § 406(b)(1).

Plaintiff filed an application for disability insurance benefits on January 28, 1974, alleging that he had been disabled since December 17, 1973, due to a cervical root syndrome and a duodenal ulcer. After this application was denied both initially and on reconsideration by the Bureau of Disability Insurance of the Social Security Administration, a hearing was held before an Administrative Law Judge (ALJ). The ALJ rendered a decision on January 20, 1976, finding that plaintiff was not disabled within the meaning of the Social Security Act. This decision was vacated by the Appeals Council and remanded for purposes of obtaining the testimony of a vocational expert. After a supplemental hearing was held, the ALJ issued a second decision, denying plaintiff's claim for disability insurance benefits. This decision was affirmed by the Appeals Council on May 16, 1977.

Plaintiff is a fifty-one year old man, has a fourth grade education, and has worked as a carpenter for approximately thirty years. Plaintiff testified that he was forced to quit working in December, 1973, because of severe pain in his back and shoulders. He indicated that he has continued to experience such pain since that time and consequently has had considerable difficulty in lifting, reaching, or pulling. Other problems which plaintiff said he experienced were the inability to stand or sit for

long periods of time and numbness in his left hand. According to the plaintiff, he has not been able to do very much work around the house, because he would start aching all over whenever he tried to work. In addition, plaintiff stated that he had trouble sleeping and frequently woke up during the night because of pain. At the supplemental hearing, plaintiff indicated that he took a nap four times a day to make up for the sleep he lost at night. Plaintiff testified that the medication he took consisted of Tylenol, Butibell, and sleeping pills.

Plaintiff's wife, who also testified at the hearing, corroborated plaintiff's complaints of pain, as well as the problems he allegedly experienced in working, sleeping, or standing for long periods of time. She indicated that her husband had become worried and depressed.

Included in the record are reports from Dr. Richard E. Shelling, plaintiff's treating physician since January, 1974, and from several other physicians who have examined the plaintiff.

Plaintiff was admitted to the Robert Packer Hospital on January 4, 1974, with complaints of a shoulder ache.[1] Dr. Shelling reported that plaintiff, at that time, was experiencing a great deal of pain in the neck as well as in the shoulders; and, after performing a physical examination, the physician noted that there was a slight limitation of movement in plaintiff's neck. In addition, Dr. Shelling characterized the trapezius muscle as very tight, but found no vertebral tenderness. Plaintiff was placed on physical therapy with intermittent traction, heat, and massage. Considerable improvement was noted in plaintiff's condition, and he was discharged on January 9, 1974, with a final diagnosis of cervical root syndrome.

Plaintiff was readmitted to the Robert Packer Hospital on January 11, 1974, with complaints of hiccups and vomiting. His condition was diagnosed as probable duodenal ulcer. He was treated for this condition and discharged on January 17, 1974.

In April, 1974, plaintiff was examined by Dr. William A. Steinbach, who reported that plaintiff was experiencing pain in the left shoulder and down the left arm. Dr. Steinbach stated that x-rays showed osteoarthritic changes in the cervical spine, which could account for the pain. The doctor's impression was cervical osteoarthritis with nerve root compression and ridicular symptoms. Plaintiff was told to use intermittent cervical traction at home.

A report of an x-ray finding by the Chenango Bridge Medical Group, dated November 25, 1974, indicated that there was a straightening of plaintiff's cervical spine which might have been due to position or muscle spasm.

The record also contains a report from Dr. James J. McGuire, dated November 29, 1974. He stated that plaintiff's examination was essentially negative. He indicated that there were no objective findings of limitation of motion of the neck, neurological signs, atrophy or demonstrable weakness of the left upper extremity. Moreover, he said that while there was a slight straightening of the cervical spine, there was not any limitation of motion of the cervical spine. He concluded that he could not confirm the diagnosis described by the patient, but believed that plaintiff should have a neurological evaluation and probably a cervical myelogram.

Dr. George M. Raus performed an orthopedic examination of plaintiff on October 2, 1974, at the Veterans Administration Outpatient Clinic. Dr. Raus observed that plaintiff moved around easily and did not exhibit any overt evidence of physical disability or limitation. On the other hand, he stated that while there was complete cervical spine mobility in all directions, extremes of all movements were uncomfortable in the posterior cervical area. Likewise, while there was complete mobility in the shoulders, extremes of shoulder elevations were uncomfortable. X-rays of the cervical spine

---

1. The hospital discharge summary stated that plaintiff was admitted on January 4, 1973.

From the context of the report, it appears that this date should be January 4, 1974.

and both shoulders were found to be negative, and plaintiff's condition was diagnosed as chronic cervical dorsal strain, symptomatic only.

In an entry made in the hospital progress sheet for August 1, 1974, Dr. Richard E. Shelling, plaintiff's treating physician, stated that there was paricervial muscle spasm on the left side of plaintiff's neck and a great deal of muscle spasm in the left trapezius. Extension of the neck was noted as being limited, as plaintiff had difficulty placing his ear on his left shoulder. Dr. Shelling said that plaintiff was disabled because of cervical root syndrome and was unable to do his customary occupation due to extreme pain.

In a hospital entry, dated February 6, 1975, Dr. Shelling stated that plaintiff had tried to work a number of times, but experienced extreme pain for three or four days after doing a day's work. The doctor concluded, "I don't believe . . . [plaintiff] could be gainfully employed at the present time in any occupation."

On October 28, 1975, Dr. Shelling reported that a myelogram was done in September of that year and was normal, and that a cine of the neck was read as normal. Because of these findings, Dr. Shelling indicated that he was unable to definitely pinpoint what was causing plaintiff's problems. Nonetheless, he concluded that due to the pain in plaintiff's neck and shoulders, plaintiff was disabled for work.

On December 12, 1975, Dr. Shelling reported that plaintiff was disabled for his occupation of carpentry since he could not do any work involving use of his left arm, hammering, lifting, pushing, or pulling.

After the ALJ's initial decision of January 20, 1976, several letters from Dr. Shelling were received into evidence either by the Appeals Council or by the ALJ on remand. In a letter, dated February 12, 1976, the physician stated that an x-ray performed on February 9 of that year indicated that plaintiff had degenerative disease in his back, most likely disc degeneration. He concluded that an employer, aware of this history, would certainly not hire plaintiff. In a letter, dated February 17, 1976, Dr. Shelling said that plaintiff's back problem would make it more difficult for him to obtain a job as he would be unable to do any job that involved heavy lifting, pushing, or prolonged sitting.

In a letter, dated November 22, 1976, Dr. Shelling reported that plaintiff was suffering from three distinct problems: (1) cervical root syndrome, (2) lumbar root syndrome, which was probably manifested by a lumbar disc that had developed subsequent to the cervical condition, and (3) severe depression, which resulted from the other problems. In Dr. Shelling's opinion, the combined effect of these three ailments rendered plaintiff disabled. Because of the cervical impairment, Dr. Shelling felt that plaintiff was unable to engage in his former occupation, but the doctor indicated that plaintiff's neck and arms did not bother him too much when he was not doing heavy labor. Dr. Shelling also reported that, because of the lumbar problem, plaintiff had trouble moving about, was forced to limp at times, and had difficulty in sitting for long periods of time. Since plaintiff was unable to maintain a sedentary position for prolonged periods, Dr. Shelling said that it would be very difficult for him to do any sedentary work. With regard to the mental problems, the physician stated that plaintiff's perceptions were not affected, but that his reasoning was probably impaired and that he lacked ambition and had a great deal of difficulty in concentration.

At the supplemental hearing, Anthony Salerno, a vocational expert, testified. The vocational expert stated that, in his opinion, plaintiff could not return to his former employment as a carpenter, but was capable of engaging in certain other jobs in the regional economy such as mechanical assembly work or electronic assembly work. According to Mr. Salerno, the employees, who performed these jobs, used slightly elevated benches, and could do their work in a standing or sitting (semi-standing) position. On cross examination, the expert indicated that, while an employee could change his position in a limited way, he could not walk

around or lie down after working for awhile. The vocational expert also stated that it would be very difficult to do assembly work with numb hands.

In his initial decision, the ALJ found that plaintiff was suffering from cervical root syndrome which precluded him from engaging in his customary occupation as a carpenter. In his second decision, the ALJ found that plaintiff had "the residual functional capacity and vocational capability of engaging in a wide range of light and sedentary employment." Therefore, the judge concluded that plaintiff was not entitled to a period of disability or disability insurance benefits.

■ In reviewing a denial of Social Security disability benefits, a court's function is to determine whether the decision of the Secretary is supported by substantial evidence on the record as a whole. · *Lewis v. Weinberger,* 515 F.2d 584, 586 (5th Cir. 1975); *Franklin v. Secretary of Health, Education and Welfare,* 393 F.2d 640, 642 (2d Cir. 1968); *McMillen v. Califano,* 443 F.Supp. 1362, 1366 (N.D.N.Y.1978). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) quoting from *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). However, it "must do more than create a suspicion of the existence of the fact to be established." *NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660 (1939).

■ In assessing an individual's disability, the Secretary must consider: (1) the objective medical facts, (2) the medical opinions of the examining or treating physicians, (3) the claimant's subjective symptoms, and (4) the claimant's educational background, age, and work experience. *Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir. 1978); *Gold v. Secretary of Health,* *Education and Welfare,* 463 F.2d 38, 41 n.2 (2d Cir. 1972); *Kenny v. Weinberger,* 417 F.Supp. 393, 397 (E.D.N.Y.1976).

For purposes of the Social Security Act, disability is defined as

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).

■ A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). It has been held that this section does not require that medical opinions be necessarily supported by "objective" clinical or laboratory findings. *Cutler. v. Weinberger,* 516 F.2d 1282, 1286–87 (2d Cir. 1975); *Stark v. Weinberger,* 497 F.2d 1092, 1097 (7th Cir. 1974); *Bittel v. Richardson,* 441 F.2d 1193, 1195 (3d Cir. 1971). Therefore, a medical opinion does not become unacceptable simply because it is based upon the claimant's symptomology. *Stark v. Weinberger, supra,* 497 F.2d at 1097; *Bittel v. Richardson, supra,* 441 F.2d at 1195.

■ It is within the province of the Secretary to evaluate and resolve any conflicts in the evidence, *Clark v. Weinberger,* 389 F.Supp. 1168, 1170 (D.Vt.1974), *aff'd,* 511 F.2d 1390 (2d Cir. 1975), and, therefore, in an appropriate case, the Secretary may reject the conclusion of the claimant's treating physician as to the existence of a disability, after weighing this conclusion in balance with other evidence in the record. *Sykes v. Finch,* 443 F.2d 192, 194 (7th Cir. 1971); *Grates v. Califano,* 448 F.Supp. 674, 677–78 (N.D.N.Y.1978); *Teschner v. Weinberger,* 389 F.Supp. 1293, 1294–95 (E.D.Wis. 1975). On the other hand, the Secretary is

bound by a treating physician's opinion where this opinion is not contradicted by substantial evidence to the contrary. *Bastien v. Califano, supra,* 572 F.2d at 912; *Gold v. Secretary of Health, Education and Welfare, supra,* 463 F.2d at 42; *Branham v. Gardner,* 383 F.2d 614, 634 (6th Cir. 1967).

In the present case, the ALJ, in his initial decision, concluded that Dr. Shelling's opinion was that plaintiff was disabled only for his former occupation of carpentry. While this evaluation of Dr. Shelling's opinion may have been justified by the record that was before the ALJ when he rendered his first decision,[2] it is not justified by the present record. A fair reading of the letters which were received into evidence, after the issuance of the ALJ's decision of January 20, 1976, indicates that Dr. Shelling regarded plaintiff as completely disabled for purposes of employment.[3] This is particularly evident from a reading of Dr. Shelling's letter of November 22, 1976, in which he summarizes his findings as to plaintiff's impairments. Dr. Shelling felt that plaintiff was unable to do carpentry work or other heavy labor because of his cervical impairment, and felt that plaintiff was unable to engage in sedentary work activity because of his lumbar problems. In addition, the doctor believed that a severe depression contributed to plaintiff's disability, resulting in lack of ambition and difficulty in concentration.

Hence, the Secretary's denial of benefits can be upheld only if there is substantial evidence in the record to contradict the treating physician's finding of disability. The reports of two physicians—Dr. McGuire and Dr. Raus—tend to indicate that any impairment plaintiff may have been suffering from was not particularly severe.[4] However, the Court does not believe that these reports constitute substantial evidence to counter Dr. Shelling's conclusion. The reports from Dr. McGuire and Dr. Raus were based upon examinations that were performed in October, 1974 and November, 1974, while Dr. Shelling's most recent letter was based upon an examination conducted in October, 1976. It is quite possible that plaintiff's condition may have worsened during this two-year period. In this regard, the Court notes that Dr. Shelling stated, in his letter of November 22, 1976, that plaintiff's lumbar problem developed subsequent to his cervical impairment. The former problem was not mentioned in the statements which Dr. Shelling made in the time period in which Dr. McGuire and Dr. Raus issued their reports. Thus, this condition may not have existed in October or November of 1974. Moreover, plaintiff's severe depression also may not have existed in late 1974, since this condition resulted from the combined effect of plaintiff's other problems. Therefore, the absence of contemporaneous medical reports contradicting Dr. Shelling's most recent letters represents a serious deficiency in the present record.

---

2. While Dr. Shelling stated, in the hospital entry for February 6, 1975, that he did not believe plaintiff could be gainfully employed at that time in any occupation, he simply said that plaintiff was disabled for his occupation of carpentry in the most current report in the record when the ALJ rendered his first decision (the doctor's letter of December 12, 1975).

3. While these letters were received into evidence, they were not considered by the ALJ in his second decision. The judge confined that decision to a consideration of the vocational expert's testimony. The Court believes that it would have been within the authority of the ALJ to consider these reports on remand from the Appeals Council. While the Appeals Council remanded the case for the purpose of obtaining the testimony of a vocational expert, it instructed the ALJ to take "any other actions not inconsistent with [its] order."

4. Despite the fact that Dr. Raus' report seemed to indicate that plaintiff's condition was not particularly severe, plaintiff was apparently awarded a disability pension by the Veterans Administration on the basis of this report. The Social Security Administration has different standards for determining disability than the Veterans Administration, and so the Secretary is not bound by the VA's finding of disability. *Celani v. Weinberger,* 393 F.Supp. 804, 810 (D.Md.1975); *French v. Richardson,* 324 F.Supp. 1152, 1155 (W.D.Va.1971). However, the finding of disability by the VA or another agency should be given some consideration by the Secretary. *Cutler v. Weinberger, supra,* 516 F.2d at 1286; *Zimbalist v. Richardson,* 334 F.Supp. 1350, 1355 (E.D.N.Y.1971).

*See Bastien v. Califano, supra,* 572 F.2d at 912.⁵

In addition, the Court is reluctant to regard Dr. McGuire's report as substantial evidence to support the Secretary's determination for two additional reasons. First, the report appears to be inconclusive, as the doctor indicated that, in his opinion, additional tests should be conducted. Second, the ALJ apparently did not rely upon this report in making his determination, since it was not mentioned in either of his two decisions.

Furthermore, the vocational expert's testimony that plaintiff can engage in mechanical and electronic assembly work cannot properly be viewed as substantial evidence to support a finding of nondisability on the basis of the present record. In testifying in a Social Security disability case, a vocational expert must necessarily base his opinion upon the medical evidence in the record concerning the claimant's physical functional capacity to engage in substantial gainful employment. Therefore, a vocational expert's opinion that a claimant can perform light and sedentary jobs can provide substantial evidence for a denial of disability benefits only if there is sufficient medical evidence to support a finding that the claimant has the physical functional capacity to engage in such employment. *Allen v. Weinberger,* 552 F.2d 781, 786 n.3 (7th Cir. 1977). *See also Brittingham v. Weinberger,* 408 F.Supp. 606, 614 (E.D.Pa. 1976); *Thomas v. Weinberger,* 398 F.Supp. 1034, 1040 (D.Kan.1975). As previously indicated, there is not adequate medical evidence in the present record to support such a finding.

Even if the Court were to conclude that there is technically substantial evidence to support the Secretary's determination, a reversal would be justified in this case, because the record fails to clearly show that the Secretary considered the combined effect of plaintiff's ailments upon his condition. In his letter of November 22, 1976, Dr. Shelling identified three distinct problems plaintiff was suffering from: (1) cervical root syndrome, (2) lumbar root syndrome, and (3) severe depression. The latter two factors were not considered by the ALJ in his initial decision since the letter discussing these elements was not received into evidence until after this decision had been rendered. These factors were also not considered in the ALJ's second decision, which decision was limited to a consideration of the vocational expert's testimony received at the supplemental hearing.⁶ A proper evaluation of plaintiff's claim requires that the Secretary expressly consider the combined effect upon the plaintiff of the various ailments identified by his physician. *See Cutler v. Weinberger, supra,* 516 F.2d at 1285; *Gold v. Secretary of Health, Education and Welfare, supra,* 463 F.2d at 42; *Colwell v. Gardner,* 386 F.2d 56, 74 (6th Cir. 1967).

In addition, the Court is troubled by the fact that the ALJ did not expressly consider plaintiff's subjective symptoms as set forth in the testimony of plaintiff and his wife. In the course of evaluating the medical reports, the ALJ did indirectly consider some of plaintiff's subjective symptoms—pain in the neck and shoulders, difficulty in doing any lifting, and numbness in the hands—but the judge failed to make any reference to certain other subjective complaints—inability to sit for long periods of time, difficulty in sleeping, and a feeling of depression. Of course, the ALJ, as trier of fact, was not bound to accept the self-serving statements of plaintiff and his wife. It was within his province to reject such statements, weighing them against the oth-

---

5. It is possible that plaintiff may not have been *disabled within the meaning of the Social Se- curity Act* on the date he claimed to have become disabled (December 17, 1973), but may have become disabled for purposes of the Act on a later date. A claimant will prevail if he can show that he became disabled at any time up to the date of the Secretary's final decision, so long as the claimant still satisfied the special earnings requirements of the Act at that time. 42 U.S.C. § 423(b), (c); *Bastien v. Califano, supra,* 572 F.2d at 912; *Frye v. Celebrezze,* 365 F.2d 865, 867 (4th Cir. 1966).

6. *See* note 3 *supra.*

er evidence in the record and keeping in mind the interest and credibility of the witnesses. *Reyes Robles v. Finch,* 409 F.2d 84, 87 (1st Cir. 1969); *Peterson v. Gardner,* 391 F.2d 208, 209 (2d Cir. 1968); *Baldridge v. Weinberger,* 383 F.Supp. 1241, 1243–44 (D.Neb.1974). However, it is error for the ALJ to fail to consider expressly such subjective complaints. *DePaepe v. Richardson,* 464 F.2d 92, 99 (5th Cir. 1972); *Storck v. Weinberger,* 402 F.Supp. 603, 607 (D.Md. 1975); *Black v. Richardson,* 356 F.Supp. 861, 871 (D.S.C.1973).

 Accordingly, the Court is of the opinion that the denial of disability benefits to the plaintiff cannot stand on the basis of the present record. In such circumstances, the Court has the authority to reverse, with or without remanding for further proceedings. 42 U.S.C. § 405(g). The Court does not believe that a reversal alone would be appropriate in this case, since the record is not conclusive that plaintiff is so disabled that under no circumstances could he perform any job because of his various ailments. Reversal in this case should be accompanied by a remand to afford the Secretary the opportunity to adduce additional evidence to counter Dr. Shelling's finding of disability. *Bastien v. Califano, supra,* 572 F.2d at 913; *Wyatt v. Weinberger,* 519 F.2d 1285, 1287 (4th Cir. 1975). Of course, plaintiff should be permitted to adduce additional proof to buttress his showing of disability.[7] On remand, the Secretary should explicitly consider plaintiff's subjective complaints and the letters from Dr. Shelling which were received into evidence after the ALJ's initial decision, as well as any additional evidence that may be submitted by either party.

 Title 42 U.S.C. § 406(b)(1) authorizes a court, which renders a judgment favorable to a Social Security disability claimant, to allow as part of its judgment reasonable attorney's fees, not in excess of 25 percent of the total of past-due benefits to which the claimant is entitled by reason of such judgment. The attorney's fees are to be paid out of, and not in addition to, the amount of such past-due benefits. *Reeves v. Mathews,* 435 F.Supp. 419, 425 (E.D. Tenn.1977). Since the Court is not, at this time, ordering the Secretary to grant disability benefits to the plaintiff, it must deny the motion made by plaintiff's counsel for attorney's fees. However, the denial of this motion is without prejudice. If plaintiff is subsequently awarded disability benefits, either by the Secretary or by this Court, plaintiff's counsel will be able to recover reasonable attorney's fees for work performed on the present motion. *Ray v. Gardner,* 387 F.2d 162 (4th Cir. 1967); *Conner v. Gardner,* 381 F.2d 497 (4th Cir. 1967); *Davis v. Secretary of Health, Education and Welfare,* 320 F.Supp. 1293 (N.D.Miss.1970).

Accordingly, defendant's motion for a judgment on the pleadings or, in the alternative, for summary judgment is denied. Plaintiff's motion for summary judgment is granted to the extent herein set forth. The case is remanded to the Secretary of Health, Education and Welfare for further proceedings consistent with this opinion. The motion made by plaintiff's counsel for an award of attorney's fees is denied without prejudice.

It is so ordered.

---

7. Plaintiff last met the special earnings requirement of the Social Security Act on December 31, 1977. While plaintiff must have been under a disability on or prior to that date, evidence bearing on his condition subsequent to such date is relevant, as it may disclose the severity and continuity of impairments existing before the earnings requirement date. *Gold v. Secretary of Health, Education and Welfare, supra,* 463 F.2d at 41–42; *Carnevale v. Gardner,* 393 F.2d 889, 890 (2d Cir. 1968).